## SOUTHERN DEPARTMENT—EASTERN DIVISION. NOVEMBER TERM, 1895.

THE MISSOURI PACIFIC RAILWAY COMPANY **v.** ASA
WEBSTER.— SAME v. MILTON RUTH.— SAME v. H.
R. POLSON.

### No. 41.

1. CASE-MADE—*Method of·Service.* A case-made must be served
upon the opposite party or his attorney within the time allowed
by law or fixed by the trial court or judge, or the service thereof
must have been waived by said party or his·attorney prior to said
time, and the record must affirmatively show one or the other to
have been done in order to make a legal case.

2. ———— *Evidence of Service.* When the case is made, and prior
to the expiration of the legal time the plaintiff in error proposes
to serve it upon the opposite parties, and they ask him to send it
to their attorney at O., and they would waive service on them,
and the case is so sent, and the case is returned by said attorney
with suggestions of amendments thereto, *held,* that upon such
evidence the trial judge is justified in finding that the case-made
was served in time, for the reason that the waiver of service of the
defendants in error is equivalent to service.

3. DEMURRER—*Review.* A party may, if he so elects, stand upon
his demurrer, and if he does, he may, if said demurrer be over-
ruled, at once take the case to the reviewing court. He may also,
if he so elects, answer and participate in the trial of the case, and
if judgment is rendered against him he may then take the case to
the reviewing court, and the demurrer, as well as the other errors
complained of, will be considered by said court.

4. WATERCOURSE—*Liability for Obstruction.* The construction
of embankments across the channel of a natural watercourse,
without opening sufficient to carry all the water through which
may reasonably be expected to flow through such watercourse,
·renders such embankments a nuisance, and the party construct-
ing the same is liable for any damage caused by the construction
of such nuisance.

5. ———— *Liability of Lessee.* A lessee who has control of the
land upon which such embankments are constructed, with actual

knowledge that such embankments are a nuisance, is also liable for such damages.

6. PETITION *Insufficient—Nuisance.* A petition which fails to allege that the defendant erected a nuisance or had actual knowledge that such erection was a nuisance does not contain a sufficient allegation of facts to entitle the plaintiff to recover damages caused by such nuisance, and a demurrer to such a petition should be sustained.

7. ——— *Improper Amendment.* Where the plaintiff, after judgment is rendered, files an amendment to a defective petition, for the purpose of making it correspond with the facts proven, and where there is no evidence to support the petition as amended, *held,* that such amendment was improperly made, and the defect is not cured.

MEMORANDUM.—Error from Wilson district court; L. STILLWELL, judge.   Three actions brought by Asa Webster, Milton Ruth and H. R. Polson against The Missouri Pacific Railway Company to recover damages on account of overflow of water.   Judgment for plaintiffs.   Defendant brings the cases to this court.   Reversed.   Opinion herein, filed December 4, 1895, states the material facts.

*J. H. Richards,* and *C. E. Benton,* for plaintiff in error; *S. S. Kirkpatrick,* of counsel.

*T. J. Hudson,* for defendants in error; *R. W. McGrath,* of counsel.

The opinion of the court was delivered by

DENNISON, J.: These are three separate and distinct actions brought by the respective defendants in error against The Missouri Pacific Railway Company to recover damages to their crops and lands sustained by them during the years 1889 and 1890, occasioned by the overflow of water alleged to have been caused by the improper construction of the Le Roy & Caney

Valley Air Line railroad. After the issues were made up, by the agreement of counsel and the consent of the court below, these cases, being substantially alike, were tried together. · It was agreed that all the evidence which was competent and proper in each case should be introduced and the court should apply the evidence to the proper case. A jury was waived. It was also agreed that, if judgments should be rendered for the plaintiffs, they should be rendered separately in proper amounts. The trial was had, judgments rendered for the plaintiffs, and the railway company brings the case to this court for review.

The defendants in error raise the question that the case-made was not served in time, and that, therefore, there is no legal case-made filed with the petition in error and nothing for us to consider. We will first consider this question, for if we decide the point well taken the other alleged errors need not be considered.

On September 19, 1890, the court allowed the defendant below 60 days from that date in which to make a case, and the plaintiffs were allowed 20 days thereafter in which to suggest amendments thereto, said case to be settled on five days' notice of the time and place of settlement. This time was not extended by the court prior to its expiration. The case must have been made and served upon defendants in error or their attorney on or before November 18, 1890, or the said defendants in error or their attorney must have waived the service thereof on or before said time, and the record must affirmatively show one or the other to have been done. The record fails to show the actual service of the cases within the time allowed by the court. It contains the following affidavits of

C. S. Reed and S. S. Kirkpatrick, two of the attorneys for the plaintiff in error:

"State of Kansas, County of Wilson, ss. C. S. Reed, being duly sworn, on his oath says he is one of the attorneys in the cases of Webster, Ruth and Polson against the Missouri Pacific Railway Company; that prior to the time fixed for the service of the cases for the supreme court in the above cases the same were all prepared and ready for service, and he proposed to serve the same on the said Webster, Ruth, and Polson, their attorney being at Ogden, Utah; that said parties asked the affiant to send said cases-made to their attorney at Ogden and they would waive all notice as to the service on them. Affiant further says, that prior to the expiration of said time he had a letter from plaintiffs' attorney, stating in substance that if he, Reed, would send the cases to him at Ogden, he would accept that as service of said cases in time; and affiant further says that he did so forward said cases, and never heard it suggested that said cases were not served in time until after the cases were sent back with the suggestion of amendment. Affiant further says, that more than five days prior to the 8th day of September, 1891, he served a notice on T. J. Hudson of the time and place of settling said cases.—C. S. REED."

"State of Kansas, county of Wilson, ss. S. S. Kirkpatrick, being duly sworn, on his oath says that C. S. Reed, prior to the expiration of the time for making the cases in Webster, Ruth and Polson against the Missouri Pacific Railway Company, made up said cases and, then submitted them to affiant for his inspection; that affiant examined said cases, made some changes therein, and returned them to Mr. Reed some days prior to the expiration of the time in which said cases were to be served under the order of the court. Affiant further says, that some months thereafter said made case was returned to affiant with the suggestions of amendments made by the plaintiffs' attorney, who was at Ogden at that time, as affiant be-

lieves.    And affiant further says, that he never had it suggested that said cases were not served in time until after he attempted to have said cases settled.    Affiant further says, that Mr. Hudson, counsel for the plaintiffs, then and there stated that he had agreed that if the cases were sent to him at Ogden he would not question the time of service, but further stated it was upon the condition that the amendments suggested were to be allowed and the cases settled at an early day.—S. S. Kirkpatrick."

And the certificate of the judge (omitting title) is as follows :

"The cases-made in the above-entitled cases were first presented to me for settlement and allowance about the middle of February, 1891, at Fredonia, Wilson county, Kansas, and during the February (1891) term of said court.    They were accompanied by the suggestions of amendments made by Mr. Hudson, attorney for plaintiffs, which said suggestions are hereto attached, marked 'A.'    The cases as presented were separate and distinct and each one complete in itself.    I handed the cases back to Mr. Kirkpatrick, one of the defendant's attorneys, on the day after I received them, with the suggestion on my part that he had better reshape the cases and consolidate them, as indicated in the first suggestion of amendment in the amendments suggested in the Ruth case, hereto attached, marked 'A.'    Mr. Kirkpatrick indicated to me his willingness to do that.    The cases were next presented to me on September 8, 1891, at Fredonia, Wilson county, Kansas, for settlement and allowance. They were still in a separate and independent form, as when first presented, and I again handed them back to Mr. Kirkpatrick, with the suggestions on my part as before to consolidate them.    They were next presented to me as they now appear on September 15, 1891, and accompanied by some suggestions and objections from Mr. Hudson, plaintiffs' attorney, which are hereto attached, marked 'B.'

"The said defendant has presented to me proof of

service of said cases-made on plaintiffs' attorney, Mr.
Hudson, said proof consisting of the affidavits of C. S.
Reed and S. S. Kirkpatrick, hereto attached, marked
'C,' and from said proof I find that said cases were
served within the time fixed by the order of the court.
I also find that Mr. Hudson, plaintiffs' attorney, has
been notified of the time and place when and where
said cases would be presented for signing and allow-
ance.

"And now, on this 16th day of September, 1891,
having carefully examined said cases-made, and find-
ing them true and correct, I do sign and allow the
same as true and correct cases-made in said cases, and
the clerk of the district court of Wilson county, Kan-
sas, is ordered to sign and attest the same as such."

The affidavit of Reed says that prior to the expira-
tion of the time for serving said cases the same were
prepared and ready for service, and that he proposed
to serve the same upon the defendants in error; that
said defendants in error asked him to send them to
their attorney at Ogden, Utah, and they would waive
service on them. The cases made were by him sent
to the attorney at Ogden. The affidavit of Reed is
undisputed by the defendants in error or by the rec-
ord. The affidavit of Reed further says, that prior to
said time he had a letter from the attorney of defend-
ants in error stating in substance that if he would
send the cases to him at Ogden he would accept that
service in time; also, that the cases were returned
with the suggestions of amendments thereto, and that
he never heard the service questioned until the time
of settling the cases.

It is probable that the letter from the attorney would
have been the best evidence, but upon the whole evi-
dence the trial judge was justified in finding that the
cases-made were served in time, for the reason that the
waiver of service by defendants in error was equiva-

lent to service, and no substantial right of the defendants in error has been prejudiced in the serving, settling and signing the case-made filed with the petition in error herein and the case will be considered on its merits. The errors complained of, as set forth in the petition in error in this case, are: First, the said court erred in overruling the demurrer of the plaintiff in error to the respective petitions of the defendants in error; second, the said court erred in overruling the motion of the plaintiff in error for a new trial in said respective cases. No others will be considered. (*Brown v. Rhodes*, 1 Kan. 359; *Green v. Dunn*, 5 id. 262; *Beck v. Baden* [post], 42 Pac. Rep. 845.)

Did the court err in overruling the demurrer to the petitions filed in the respective cases? The ground for the demurrer is that the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant. The points relied upon by the plaintiff in error are, "that it does not appear from the petition that the defendant constructed the railroad in controversy, nor does it appear that the defendant had notice of the defective condition of the road." The allegations of the petition which bear upon these points are as follows:

"The plaintiff, for his cause of action against the Missouri Pacific Railway Company, the defendant, says: That the defendant is and has been at all times hereinafter mentioned a corporation of the state of Missouri; that as such it operates a railroad line across the county of Wilson and state of Kansas known as the Le Roy & Caney Valley Air Line railroad. . . . That said railroad was built and completed at said point in the year 1886, since which said time it has been under the control, in charge of, maintained and operated by the defendant."

There is no allegation in the petition either that the plaintiff in error constructed the railroad or had knowledge of the defective condition thereof. Is it necessary? If it is necessary to prove it, it is necessary to allege it. The allegation is that the company maintains and operates the road.

The defendants in error contend that, as the company answered to the petition and the case was tried, the ruling upon the demurrer cannot be reviewed by us. In their brief, counsel say: "It is a principle of of law so well established at this time that it would be an unnecessary consumption of time to reiterate it, that the defendant below must stand on its demurrer; if it chooses to answer, and the case is tried, evidence submitted, as in this case, it is bound by the rules of the trial." We do not so understand the law as laid down by our supreme court. A party may, if he so elects, stand upon his demurrer, and if he does, he may, if said demurrer is overruled, at once take the case to the reviewing court. He may also, if he so elects, answer and participate in the trial of the cause, and if judgment is rendered against him he may then take the case to the reviewing court, and the demurrer, as well as the other errors complained of, will be considered by said court at the same time. The only effect of filing the answer and participating in the trial is that the party appealing cannot take the question of error in the ruling upon the demurrer to the reviewing court until he takes the remainder of the case. (*U. P. Rly. Co. v. Estes*, 37 Kan. 229.)

We will review the ruling upon the demurrer. The petition alleges that in the construction of said railroad high embankments were thrown up for a long distance upon each side of the natural channel of

Snake creek, and that a large portion of the natural channel was filled up by said embankments, and the opening left for the passage of the water is too small, and that the water in time of a flood backed up over the land of defendants in error, to their damage, etc. This is a claim for damages caused by the erection and maintenance of a nuisance, the embankment being the nuisance which caused the water to back up and flood the lands of defendants in error. The petition should have alleged that the plaintiff in error either erected the nuisance or had actual knowledge that it was maintaining a nuisance. (*Trust Co. v. Cuppy*, 26 Kan. 754.)

The plaintiffs below, after the judgment had been rendered, obtained from the trial court leave to amend their petitions to correspond with the acts proven on the trial, and thereupon interlined said petitions by adding the words " caused to be built, had constructed and," so that they now read, " that as such it caused to be built, had constructed and maintains and operates a railroad line." This relates to the above charge of erecting and maintaining a nuisance, and if the amendment had been in the petition at the time the demurrer was heard the petition would have been good. Counsel for defendants in error contend that the amendment made after judgment cures the defect in the original petitions. It will not be necessary for us to determine whether this is correct or not, for the reason that there is no evidence to show that the plaintiff in error caused the railroad to be built, or that it had it constructed. The only evidence on this point is the evidence of C. S. Reed, who was witness for defendants in error, and the condemnation proceedings introduced by the plaintiff in error. All of the evidence by Mr. Reed is as follows:

" Ques. Mr. Reed, are you acquainted with the

Caney Valley Air Line railroad? Ans. Why, yes; I know where it is.

"Q. Know of it ever since its inception and up to the present time? A. Yes, sir.

"Q. Do you know for what railroad company it was constructed or built? [Objected to, except what the gentleman knows of his own knowledge.] A. Why, what do you mean, Mr. Hudson—for what company it was built?

"Q. Yes, sir. A. It was built for the Missouri Pacific Railroad Company.

"Q. Do you know who has been operating it—under whose control and charge it has been ever since it was constructed? A. Yes, sir.

"Q. For what company? A. The Missouri Pacific Railroad Company.

"Q. The corporation commonly known as the Missouri corporation, owned by Jay Gould? A. That is my understanding. I do n't know anything about that; I did not know there was any other corporation."

Cross-examination by Mr. Kirkpatrick:

"Q. Do you know it was the Missouri Pacific Railroad Company, a corporation—whether or not there is a Missouri Pacific Railroad Company organized in the state of Kansas, of which Jay Gould is the president? A. No.

"Q. You do n't know that there is? A. No, sir.

"Q. Do you know that there is not such a one? A. No, sir.

"Q. Do you know whether or not all of the roads operated in the state of Kansas by the Missouri Pacific are operated by the Missouri Pacific Railroad Company of the state of Kansas? A. No, I do n't know that, either.

"Q. How do you know that this railroad was built for the Missouri Pacific? A. I was present at the several meetings with the stockholders and the officers of the Missouri Pacific, and I read the contract probably 50 times.

"Q. Did you ever see the contract, or only a copy of it?    A. The original contract is in the office now, sir.

"Q. And it was built for it?    Do you know whether it was operated by lease, contract, or how?    A. Operated by lease.

"Q. Did you ever see the lease?    A. Yes, sir.

"Q. Is it on file on the record here?    A. I don't know about that, but I think so.

"Q. Who executed the lease, if you know?    A. The Le Roy & Caney Valley Air Line Railroad Company—it is my recollection.

"Q. Do you remember anything about the terms of it?    A. I think it was 99 years, and there was so many guaranteed $10,000 first-mortgage bonds, and some things of that kind."

Mr. Reed testified that the Caney Valley Air Line railroad was built for the Missouri Pacific Railway Company, and that said company had been operating it and had it under its control ever since it was first built.    Upon his cross-examination, he testified that the reason he knew that it was built for the plaintiff in error is that he was present at the several meetings with the stockholders and the officers of the Missouri Pacific Railroad Company, and he had read the contract probably 50 times.    The question that should have been determined is, What was in the contract? It was the best evidence of what it contained.    The defendants in error made no offer to produce it, and Mr. Reed testified that it was in his office.    He further said, that the railroad is operated by the company under a lease.    If the railroad was built *for* the Missouri Pacific Railroad Company, it certainly could not have been built *by* it.    Is it contended that we shall construe this evidence so as to mean that the railroad was built for it because it hired some one to build it, and therefore was the owner of it?    If it was the

owner of it, it certainly would not have been operating it under a lease, but as owner.

The condemnation proceedings show that the right of way for this railroad was secured by the Le Roy & Caney Valley Railroad Company. The evidence of Reed can only be construed to mean that the Caney Valley company built the railroad for the purpose of leasing it to the Missouri Pacific Railway Company, and did so lease it. There is surely no evidence that can be construed to mean that the Missouri Pacific Railway Company caused said railroad to be built, or had constructed it.

The evidence did support the amendment, and therefore said amendment was improperly made, and the defect in the petition is not cured, even if so material an amendment could have been made at that time. The demurrer should have been sustained. This conclusion renders it unnecessary that we should consider the other allegations of error.

The case is remanded to the court below, with instructions to the trial court to sustain the demurrer.

All Judges concurring.