THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM-
PANY V. WILLIAM HERMAN.

No. 14,619.   (85 Pac. 817.)

SYLLABUS BY THE COURT.

1. WATERCOURSES—*Railroad Bridge—Obstruction of the Stream.*
If a railroad company in building a bridge across a stream
fails to leave ample passageway for such a flow of water in
the stream as might reasonably be anticipated, and the
bridge dams the water back upon the riparian owner to his
injury, the railroad company is liable for the resulting loss.

2. ——— *Flow of Water Reasonably to be Anticipated—Floods
and Freshets.*   In an instruction advising the jury that in
building a railroad bridge across a stream railroad companies
are required to leave openings sufficient to afford an outlet
for all water that might reasonably be expected to flow in
the stream the court added the statement that they should
also provide for such unusual and extraordinary freshets as
might reasonably be expected to occur.   *Held,* that the words
"unusual and extraordinary," although not aptly used, were
so limited and explained in other parts of the charge as not
to be prejudicial.

Error from Osage district court; ROBERT C. HEIZER,
judge.   Opinion filed June 9, 1906.   Affirmed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,*
for plaintiff in error.

*Thomson, Stanley & Price,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action William Herman
sought to recover damages from the Atchison, Topeka
& Santa Fe Railway Company for the destruction of
personal property which resulted from an overflow of
water on his land.   He alleged that Switzler creek, a
natural watercourse, was negligently bridged by the
railroad company; that the bridge was faulty in con-
struction; and that the company in an attempt to
strengthen it built a web of supporting timbers under-
neath it in such a way as to impede the flow of water

and operate as a dam of the stream. In May, 1904, there was a heavy rainfall, causing an overflow of the stream, which Herman alleged was due to the improper construction and maintenance of the railroad bridge. The jury awarded Herman $229.95 as damages, which by remission was reduced to $200. The giving of an instruction is the principal error assigned. It reads:

"You are instructed that railroad companies in the construction and maintenance òf their roads over watercourses are required to leave such waterways or openings as are sufficient to afford an outlet for all water that may reasonably be expected to flow through such watercourses, and this must be with reference to such unusual and extraordinary freshets as might reasonably have been expected, after careful inspection of the size of the stream, the width of its bottom, the height of its banks, its capacity for carrying water and the surface of the country contributing to its flow, and if they fail to do so they are liable in damages to the full injury occasioned thereby."

The use of the words "unusual and extraordinary freshets," it is said, is a departure from the true rule of the law, and that the latter part of the instruction, at least, was misleading and erroneous. In the same connection the court further instructed the jury as follows:

"A railroad company, however, is not bound to anticipate extraordinary changes of seasons, nor such unusual freshets or heavy fall of water as could not be detected by a skilful engineer after taking carefully the observations to which I have just referred, nor to guard against every possible contingency, so that if you find that the damages sustained by the plaintiff, if any, were the result of such extraordinary rainfalls or freshets or inundations, or could not be apprehended in the manner hereinbefore referred to, and if you also find that the defendant was not otherwise at fault, the plaintiff cannot recover and your verdict should be for the defendant.

"It was the duty of the defendant railway company to keep the bridge in question in such condition as to

provide for the free flow of such an amount of water as might reasonably have been anticipated to flow in said stream, and, if by reason of the failure of said defendant company to perform such duty the plaintiff sustained loss and injury, the defendant would be liable therefor.

"You are instructed, gentlemen, that by the term 'act of God' is meant those events and accidents which proceed from natural causes, and which cannot be anticipated or guarded against or resisted, such as unexampled freshets, violent storms, lightning and frosts. For losses occurring by any of these means individuals and corporations are not liable, provided they have not been guilty of any want of ordinary and reasonable care to guard against such loss."

There is no real dispute between the parties as to the law governing the obstruction of streams, nor in regard to the floods or flow of water which must be provided for in bridging watercourses. Both agree that it is only such a flow of water as may naturally and reasonably be expected to pass through the channel. No one is required to provide for an unprecedented flood—a phenomenal one—which could not have been reasonably foreseen. The instructions, as a whole, indicate that the trial court held the same view, but its reference to the term "unusual and extraordinary" was not happy, and approached close to the danger line. The trouble with the use of these words in defining the duty and responsibility of the railway company is that they require definition and limitation. It should be noted, however, that the instructions given are an exact reproduction of those given and sanctioned in *Union Trust Company v. Cuppy*, 26 Kan. 754. It is natural that the trial court should have thought that the instructions which had received the express approval of this court might be safely used in a similar case. The test of liability, however, is not whether the rainfall was unusual or extraordinary, but whether it was such as might have been reasonably foreseen by bringing to the building and maintenance of the bridge such engineering knowledge and skill as

is ordinarily applied to such work. In the minds of some a freshet is neither usual nor ordinary, but since they do occur occasionally, and may reasonably be expected to occur, provision should be made for them. In *Kansas City v. King*, 65 Kan. 64, 68 Pac. 1093, it was contended that a flood which was unusual was not to be anticipated by the city. In the opinion it was remarked:

"It is true that the flood of 1892 may be said to have been an unusual one, but, although unusual, it was such as had occasionally occurred, and which the city should have anticipated and provided against. The testimony shows that such floods had occurred at irregular intervals, and that they would again occur might reasonably have been expected. It is true that floods unprecedented and so extraordinary as to have been beyond reasonable anticipation are not to be provided against, but while floods like the one which occasioned the injury were of rare occurrence in that vicinity, they had occurred so often in the past as to warrant the belief that the region was subject to them, and that, under the laws of nature, they would occur again." (Page 66.)

In text law and in decisions we frequently find recognition of degrees of the unusual and the extraordinary in freshets and floods, but always qualified by the limitation that there can be no liability unless they are such as should have been reasonably anticipated. The instruction complained of, as limited and explained by other language of the charge, cannot be said to have been misleading or prejudicial. As will be observed, the court in the instruction itself expressly told the jury that the railroad company was only required to provide outlets for such unusual and extraordinary freshets as might have been reasonably expected, and in the following instructions emphasized the view that the defendant was not liable for the result of such extraordinary rainfall or freshets as could not have been reasonably anticipated.

Attention is called to the features enumerated in the instructions which the court said must be noted by the

engineers in determining the flow of water for which provision should be made. Although the court might very properly have included something as to the history and habits of the stream, the elements enumerated are those ordinarily laid down in the books and fairly include the principal considerations. The jury were expressly admonished that in any event it was only such as might reasonably have been expected, and that this must be determined "after careful inspection of the size of the stream, the width of its bottom, the height of its banks, its capacity for carrying water and the surface of the country contributing to its flow." In *P. F. W. & C. Railway Co. v. Gilleland*, 56 Pa. St. 445, 94 Am. Dec. 98, cited by plaintiff in error, the elements which entered into the determination of what provision should be made for the flow of water were stated, and are substantially the same as those named by the trial court. It was said:

"The apparent facts indicated the duty. The stream, though small, must find a vent, or overflow the adjacent land and undermine the railroad. Its size, the character of its channel, and the declivity of the circumjacent territory which forms the watershed, indicated the probable quantity of water to be passed through. Proper engineering skill should observe these circumstances, and supply the means of avoiding the injury which would result from locking up the natural flow, or obstructing its passage so as to cause a reflux in times of ordinary high water." (Page 452.)

There is a suggestion that the overflow of the stream is to be treated as surface-water, and that the company cannot be held liable for injury resulting from such water. If the water was thrown back upon the riparian owner because of the obstruction of the channel of the stream, it is immaterial by what name it is designated. The party who obstructs the flow and causes the injury is responsible. The testimony tends to show that the flooding of Herman's property was due to the narrowing of the passageway for the water, and that, when the bridge timbers were carried away

6—74 KAN.

and the obstruction removed, the water quickly subsided, although the rainfall continued unabated for some time afterward.

Seeing no prejudicial error in the instructions given to the jury, nor in the other rulings of which complaint is made, the judgment is affirmed.

GREENE, MASON, SMITH, PORTER, JJ., concurring.

BURCH, J. (dissenting) : When the court instructed the jury that the railway company was required to leave waterways or openings sufficient to afford an outlet for all water that might reasonably be expected to flow through them it expressed the full measure of the defendant's duty. When the court introduced the element of the unusual and extraordinary—the rare, the unwonted, the remarkable, the strange—it exceeded that measure. When the court then undertook to compress within the necessary limits that which extends beyond the compass of reasonable foresight—when after leaving the field of the defendant's legal duty it marched up the hill and then marched down—it confused the law of the case.

Besides this, the railway company was held to a reasonable apprehension of unusual and extraordinary floods from what are at best but uncertain *indicia* of usual and ordinary high water. The history of the stream, which is the really reliable guide, and which controlled the decision in *Kansas City v. King*, 65 Kan. 64, 68 Pac. 1093, was excluded, and the jury were in effect told how railway engineers should predict unprecedented floods from the common features of all watercourses.

In the case of *Union Trust Company v. Cuppy*, 26 Kan. 754, from which the instructions were faithfully copied, the natural channel of a stream one hundred feet wide was filled up and the water was diverted through a culvert thirty feet wide, constructed south of the watercourse. There an engineering problem was presented—the computation of an equivalent for the

Railroad Co. v. Johnson.

old channel, to be made from the width of its bottom, the height of its banks, and the factors contributing to velocity, etc. Was the culvert big enough to do the work of the creek? No such question is presented here. Besides, this court did not approve the obtrusion of the unusual and extraordinary into that case. An investigation of the record disclosed ample evidence to prove that the culvert was manifestly incapable of taking care of the water of the stream. Hence the verdict was allowed to stand—not because the instruction was good law, but because it could not be said to be prejudicially erroneous.

In this case the railroad company was entitled to a complete, correct and unambiguous instruction defining its duty under the facts of its own case, and a new trial should be awarded in order that it may enjoy that opportunity.

GRAVES, J., concurring in the foregoing dissent.