THOMAS C. ANDERSON, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED MAY 4, 1918. No. 20087.

1. **Waters: RAILROADS: BRIDGES: FLOOD WATERS.** Where a railroad company builds a bridge on its right of way over a stream of running water, it is bound to construct an outlet of sufficient capacity to carry any flood that may or should have been reasonably anticipated when the railroad was built.

2. ———: ———: ———: NEGLIGENT CONSTRUCTION: LIABILITY. Where a railroad company so negligently constructs such channel or outlet as to obstruct and overflow the creek beyond its banks in a flood that was or reasonably should have been anticipated when the

102 Neb.—32

railroad was built, and damage from such overflow thereby ensues to the lands or the crops of another, such company is liable to respond in damages at the suit of the injured person.

3. ————: SURFACE WATERS. Overflow water that escapes from the banks of a running stream, and that does not return to its banks, nor find its way to another stream or water-course, is surface water.

4. Appeal: CONFLICTING EVIDENCE. Where the testimony conflicts on every material point at issue, but is sufficient to sustain a verdict for either party, the verdict will not be disturbed.

5. Pleading: NONSPECIFIC PLEA. It is not error to submit testimony to a jury in a law action on a material issue that has not been specifically pleaded where such issue has been generally pleaded.

6. Damages: PERENNIAL AND ANNUAL CROPS. The measure of damage for the destruction of a perennial crop, such as alfalfa and the like, is the difference between the value of the land with such crop growing thereon and the value of the land after the destruction of the crop. The measure of damage for the destruction of growing annual crops, such as corn and the like, is the value thereof immediately before their destruction.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Affirmed on condition.*

*E. E. Whitted* and *J. L. Rice,* for appellant.

*Bernard McNeny, contra.*

DEAN, J.

Thomas C. Anderson, plaintiff and appellee, began this action in Franklin county to recover for damages to growing crops occasioned by the negligent diversion of surface water to and upon his land by defendant in 1914 and 1915. Plaintiff recovered judgment, and defendant appealed.

Mr. Anderson owns 120 acres of farm land abutting on the north line of defendant's right of way. The railroad runs almost due east and west at that point for a distance of more than three-quarters of a mile. The farm is a quarter of a mile in width. About a quarter of a mile north of plaintiff's farm there is a range of hills, and leading almost directly south to his central and west forties there are two canyons that

drain to the south and that are about 80 rods apart. There is a third canyon about 40 rods west of plaintiff's west line that drains in the same direction. A creek about a half mile west of the north line of plaintiff's farm, that flows to the southwest passes under a railroad bridge maintained by defendant, and empties into the Republican river about a half mile distant. The railroad at the point in question is about a half mile north of and almost parallels the river. On the west line of plaintiff's farm a north and south highway intersects the railroad at right angles in a cut made by defendant, but there is no culvert in the road on the right of way north of the tracks. Another north and south highway is located a quarter of a mile west of the Anderson land, and intersects the railroad at right angles in a cut called "Mallory's crossing," where defendant maintains a culvert in the highway on the north of its tracks to carry surface water in the ditch from the west to the east. Defendant also maintains a railroad bridge almost directly south of plaintiff's southeast corner that was evidently erected to permit surface water from the north to escape under the track to the south. The railroad bridges are about a mile and a half apart, and between them defendant maintains no other opening through its roadbed to permit the escape of water.

Plaintiff introduced testimony tending to show that, before the bank was cut through the ridge by defendant for its road at the Mallory crossing or the Mallory culvert was installed, the surface water then flowing from the north hills and canyons and from the north or west generally, after reaching the Mallory ridge, flowed west into the creek that empties into the Republican river. It was shown that, when such surface water now reaches the Mallory crossing or ridge, it flows on east through the cut and the culvert until it reaches the highway at the southwest corner of plaintiff's farm, where defendant has not installed a culvert, and that the surface water, after flowing through the cut there,

is by the highway embankment diverted to the north for about 30 or 40 rods, and flows thence east over the highway and southeast over and upon plaintiff's land almost to the southeast corner, and that the water stood in some places on his land long enough to damage and to destroy the alfalfa and growing corn. There was also testimony on the part of plaintiff tending to show that for the years 1914 and 1915 defendant negligently permitted the ditch on the north side of its tracks to become clogged with rubbish and drift, and that the same condition prevailed in the channel or waterway under its bridge near the southeast corner of plaintiff's farm, so that the surface water that reached the bridge was not permitted to escape thereunder, but was backed up and stood upon his land. Plaintiff also offered proof to establish the fact that the channel or waterway under the west bridge, through which the creek flowed, was not of sufficient capacity to carry such water as should ordinarily and reasonably have been anticipated by defendant when the road was built, and that ordinarily and reasonably was to have been expected from occasional heavy rainfalls, and that because of such defect in the bridge swollen bodies of water escaped from the creek banks and, not again returning thereto, nor to any other stream or watercourse, flowed and stood upon his land and contributed to the damage to his crops. Plaintiff testified that in 1915 part of the water that flowed over his land from the west did not pass through the culvert at Mallory's crossing, but ran about two rods north of the railroad tracks. He testified that the creek did not overflow in the year 1914.

On the part of defendant, testimony was offered tending to show that the damage to plaintiff's crops, in part at least, was occasioned by high water in the Republican river that caused the water to cover the entire valley in the vicinity of plaintiff's farm. There was also testimony offered by defendant to show that the channels under the two bridges were of sufficient capacity to serve the purpose for which they were

constructed. But from the testimony of one of defendant's civil engineers and other witnesses it is established that the ditch on the north side of defendant's track was discontinued to the east at plaintiff's southeast corner, and that the ditch there passed under the railroad bridge, but that the land lying south of the railroad bridge at that point "is two and a half feet higher than the (railroad) ditch north of the track and under the bridge," and that this high land "prevents the water from flowing down the ditch under the bridge and to the river to the south." This seems to substantiate plaintiff's contention of negligent construction that caused the water to back up on his land. Or it may be the waterway to the south was improperly and negligently located. If, as defendant contends, the water from the Republican river overflowed the entire valley, it is probable that the high bank south of the railroad bridge would tend to prevent its escape when the river receded. Defendant's contention that the overflow of the river contributed to, if it did not entirely, destroy plaintiff's crops, at least for one year, was contradicted by some of plaintiff's witnesses, who testified that the damage to plaintiff's crops was complete some time before the river freshet occured.

There was also testimony given by one of defendant's witnesses, an employee, to the effect that the water over the railroad creek bridge in times of high water rose to a point "four feet over the track west of the bridge," but that the water did not then "come up to within four rails of the (Mallory) crossing." The same witness testified that the Mallory crossing was the high point in that vicinity, where the water divided, a part flowing west toward the creek, and a part flowing east toward the bridge near plaintiff's southeast corner. Another employee of defendant testified that "the summit of our railroad grade is about 800 feet west of the Mallory crossing," and that the suface water there divides, a part flowing east and a part flowing west to the creek.

Defendant points out that there is no specific allegation in the petition respecting damage from overflow water from the creek, and that on this point testimony is therefore not relevant. Both of the parties introduced some testimony on this feature of the case, and, in the absence of a motion to require plaintiff to make his petition more definite in the particular noted, we cannot hold the admission of the testimony to be erroneous. There is considerable testimony tending to show that the damage, in part, at least, occured because of overflow creek water that was occasioned by negligent construction and insufficient capacity of the channel beneath the railroad bridge that spanned the creek, and under the circumstances presented by the record such overflow became surface water, and must be so recognized. 40 Cyc. 639. The case was evidently tried as if the matter now complained of by defendant had been specifically and in terms pleaded. On this point we hold that the reference in the petition to surface water flowing from the west sufficiently pleaded the overflow of plaintiff's land by creek water that overflowed and escaped its banks.

Defendant complains of the instructions on the measure of damages, but on this point we believe the jury were correctly informed. The measure of damage for the destruction of a perennial crop, such as alfalfa and the like, is the difference between the value of the land with the crop growing thereon and the value of the land after the destruction of the crop. The measure of damage for the destruction of growing annual crops, such as corn and the like, is the value thereof immediately before their destruction. The jury were so instructed. The question of damages in this class of cases, while somewhat difficult, is not more so than those that juries are ordinarily called upon to decide. Some discretion must of necessity be vested in the jurors when they are considering facts upon which the testimony is so conflicting as in the present case, and in view of the record we are not disposed to disturb the verdict.

Complaint is made by defendant respecting other instructions that were given by the court, and the failure to give some instructions offered by defendant, but we do not find reversible error in the respects noted. Apparently the case was warmly contested. The testimony seemed to cover a wide range, and while it conflicts at every material point there seems to be sufficient testimony to support the verdict. All of the controverted points were fairly submitted to the jury as triers of disputed questions of fact.

Defendant contends that Andrew Jensen, a son-in-law of plaintiff, had some interest in the crops in question, and that he should have been made a party to the suit. Mr. Jensen appeared as a witness and testified on the part of plaintiff, and seemed to acquiesce in plaintiff's action. He is not now apparently in position to maintain an action.

We find no reversible error in the record, and the judgment, in view of defendant's complaint respecting Jensen's alleged interest, is affirmed on condition that plaintiff procure from Andrew Jensen and file in the district court within 20 days his disclaimer and waiver of any right or interest in the cause of action and the judgment. Otherwise, the judgment will be reversed.

AFFIRMED ON CONDITION.

SEDGWICK, J., not sitting.