No. 26,012.

## J. W. CLEMENTS, *Appellee*, v. PHŒNIX UTILITY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. WATERS—*Overflow—When Part of Stream.* Water which overflows the banks of a river at the time of an ordinary freshet or overflow and then flows over the lowlands or valley with the general course of the current of the stream, returning to the stream or its outlet farther down its course, is deemed a part of the water of the stream—following *Riddle v. Railway Co.*, 88 Kan. 248, 128 Pac. 195.

2. SAME—*Riparian Owners—Obstruction of Stream—Overflow—Liability for Injury.* The owner of property on the bank of a watercourse has the right to build levees or other barriers to confine the water to the channel of the stream, but he cannot build and maintain a structure which will change the channel or project the water against or upon the property of another, either on the same side of the stream with him or the opposite side, in such a way as will result in substantial injury to such property, without liability therefor—following *Parker v. City of Atchison*, 58 Kan. 29, 48 Pac. 631.

3. SAME—*Obstructions—Injuries from Extraordinary Flood—Liability.* The owner of property on the bank of a watercourse, in making improvements thereon, need not make provision for unusual or extraordinary flood which an intelligent person, knowing the history of the stream, could not reasonably have foreseen.

4. SAME—*Ordinary and Extraordinary Floods Defined.* An ordinary flood, in the sense here used, is one the repetition of which, though at irregular intervals, might by the exercise of ordinary diligence in investigating the character and habits of the stream have been anticipated. An extraordinary flood is one of those unexpected visitations whose comings are not foreshadowed by the usual course of nature and whose magnitude and destructiveness could not have been anticipated or provided against by the exercise of ordinary foresight.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed July 11, 1925. Affirmed.

*Paul H. Kimball, Webster W. Kimball,* both of Parsons, *H. L. McCune, R. B. Caldwell, Blatchford Downing, H. M. Noble* and *Lynn Webb,* all of Kansas City, Mo., for the appellant.

*E. L. Burton* and *Carl V. Rice,* both of Parsons, for the appellee.

1. Waters, 40 Cyc. p. 556.   2. Id., 40 Cyc. p. 575.   3. Id., 40 Cyc. p. 682; 6 L. R. A. (N. S.) 252, 27 R. C. L. 1107.   4. Id., 40 Cyc. p. 682; Flood, 26 C. J. p. 742.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages to crops growing on bottom land of the Neosho river west of the bed of the stream, which were injured by the increased overflow flood waters of that stream, the increased depth and the current of which flood waters were caused by the grade embankment of defendant's railroad constructed in the bottom land on the east side of the stream. There was a verdict and judgment for plaintiff, and defendant has appealed.

Defendant constructed along the bottom or low land of the Neosho river a line of railroad about two and one-half miles long from the station at Strauss on the Frisco to its power plant by building a grade two to eight feet high and laying the ordinary ties and rails thereon. The grade was constructed high enough to make drainage for the roadbed, a level place for the track, with culverts for ordinary surface water, but not of sufficient capacity or number to permit the free passage of the overflow water from the river. This was constructed parallel to the general course of the stream, but because of the windings of the stream it was from a few rods to half a mile from the track. The Neosho river is one of the large streams of the state, and prior to reaching the point in question drains an area of perhaps eight thousand square miles. It carries at all times a substantial volume of water, which ordinarily flows within a channel having well-defined banks. It is subject to overflow in times of freshets, and spreads out over the bottom land in places a mile or more wide. The overflow water flows with the general current of the stream, finally returning to the channel or its outlet farther south. These overflows do not occur every year, but are sufficiently frequent to be reasonably anticipated and expected. The effect of the embankment and grade of the defendant railroad was to retain much of the water on the side next to the river and impede its spreading out and flow over the bottom land to the east, increasing the depth of the flood water on the land of the plaintiff on the other side of the river to a depth of from four to fifteen inches greater than it would have been otherwise, and also to cause a current from the river to flow across plaintiff's land from the upper portion thereof. Previously at the times of high water the flood waters which covered plaintiff's land came from the lower portion of his land in the way

of backwater without current. The damages allowed in this case were for the increased damage to crops because of the greater amount of water thrown upon his land by reason of the railroad grade and embankment of the defendant.

Appellant takes the position that the owner of land on one side of a river may build an ordinary railroad track thereon without liability to the owner of land on the other side, even though the effect may be to interfere with the spread of overflow water during the existence of flood conditions not ordinary to the stream in its usual condition. In other words, it is contended that plaintiff had an absolute right to construct its railroad track along and near the east bank of the river of such height and character as to interfere with the flood water overflow from the river toward the east, and thus to increase the rise in the river so as to cause the flood water on the plaintiff's land west of the river to be deeper and swifter than it otherwise would have been. In support of this contention appellants cite and rely upon *Cubbins v. Mississippi River Comm'n*, 241 U. S. 351. In that case the Mississippi river commission, created by act of congress, and similar commissions created by acts of the legislatures of the states of Tennessee, Mississippi, Louisiana, Arkansas and Missouri, acting together under the authority of the several acts creating them, had built levees on each side of the Mississippi river to confine its water within its channel or within the levees and to prevent its overflow of the great expanse of lowlands on each side. Cubbins, the owner of a tract of the lowland on one side of the river, for himself and others similarly situated who joined with him, alleging that water had been diverted or held upon his land by reason of the levees, brought a suit to enjoin the Mississippi river commission and the state commissions associated with it from erecting and maintaining the levees. In stating some of the legal principles pertaining to flow of waters in rivers the court said:

"Without seeking to state or embrace the whole field of the Roman law concerning the flow of water, whether surface or subterranean, or to trace the general differences between that law, if any, as it existed in the ancient law of the continent of Europe, whether customary or written, or as it prevailed in France prior to, and now exists in, the Code Napoleon, one thing may be taken as beyond dispute: that not only under the Roman law, but under all the others, the free flow of water in rivers was secured from undue interruption, and the respective riparian proprietors, in consequence of their right to enjoy the same, were protected from undue interference or burden created by obstructions to the flow, by deflections in its course, or any other act limiting

the right to enjoy the flow, or causing additional burdens by changing it. But while this was universally true, a limitation to the rule was also universally recognized by which individuals, in case of accidental or extraordinary floods, were entitled to erect such works as would protect them from the consequences of the flood by restraining the same, and that no other riparian owner was entitled to complain of such action upon the ground of injury inflicted thereby, because all, as the result of the accidental and extraordinary condition, were entitled to the enjoyment of the common right to construct works for their own protection." (p. 363.)

And after referring to authorities in support of the statement made, the opinion continues:

"Were the overflows in this case accidental or extraordinary is, then, the proposition to which the case reduces itself." (p. 367.)

The court then proceeds to consider the question stated. It refused to take the view argued by the complainant, "that the valley through which the river travels, in all its length and vast expanse, with its great population, its farms, its villages, its towns, its cities, its schools, its colleges, its universities, its manufactories, its network of railroads—some of them transcontinental—are virtually to be considered from a legal point of view as constituting merely the high-water bed of the river" (p. 368), and concluded, from all the circumstances, that even annual overflows of the Mississippi river might be regarded as accidental and extraordinary within the meaning of the rule of law above stated.

The court further considered the power of congress to build the levees under the paramount authority vested in it to improve the navigation of the river and the public nature and character of the work attempted to be enjoined, and the disastrous results to an extensive area, even to the land of the complainant, and denied him relief.

The Cubbins case was followed with reference to damages resulting from the reversion of flood waters by levees in a drainage district in *Indian Creek Drain Dist. v. Garrott,* 123 Miss. 301; it was applied to the rights of a riparian proprietor or drainage district to erect levees to protect its land from the accidental and extraordinary flood waters of the stream, in *Jones v. George,* 126 Miss. 576, though in a dissenting opinion the view is expressed that the Cubbins case applies only to such streams as the Mississippi river, and not to the ordinary flood waters of an inland stream. In *Ches. & O. R. Co. v. Meriwether,* 120 Va. 55, the Cubbins case was cited to support the proposition that a railroad which, to protect its land, con-

13—119 Kan.

structs a high embankment several feet from the shore line at low-water mark and narrows the channel of a stream, is not liable therefor to a riparian owner whose land is damaged by the flood of an unusual and extraordinary freshet; and in *Conger v. Pierce County*, 116 Wash. 27 (though flood waters in that state are regarded as surface waters, *Morton v. Hines*, 112 Wash. 612), the Cubbins case is cited in support of the holding, "While a private individual has a right, under certain circumstances, to protect himself against overflow, surface and outlaw waters, he cannot so change the stream in an effort to protect his own property as that he will thereby flood or erode the property of some one else." (p. 33.) In *Taylor v. Railway Co.*, 84 W. Va. 442, the Cubbins case is cited in support of the right of a riparian proprietor to have the waters of a stream or watercourse pass his land in its natural course unobstructed, and to hold anyone violating this right liable for damages sustained thereby.

There can be no controversy concerning the principles of law, as stated in the Cubbins case, governing the matter; the only question is the application of those principles to the facts in a specific case. We have the same question before us that the court had there, viz., "Were the overflows in this case accidental or extraordinary?" In deciding that question (if it can be said the decision turned upon that question, which a careful reading of the opinion causes us to doubt) it is clear the court in the Cubbins case was greatly influenced by the great expanse of the valley, with its advanced state of civilization, and also by the public character of the work, and its importance (*Bellah v. The Phœnix Utilities Co.*, unreported opinion by Judge Pollock in U. S. D. C. filed Dec. 18, 1924), which alone was sufficient to prevent complainant's recovery.

Questions concerning waters in a state (unless it be relating to navigable streams) are state questions, as distinct from federal ones. (*Hudson Water Co. v. McCarter*, 209 U. S. 349.) Hence let us examine our previous decisions. In *Manufacturing Co. v. Bridge Co.*, 81 Kan. 616, 106 Pac. 1034, it was said:

"There are cases intimating and even expressly holding that whenever the banks of a stream are overflowed the surplus becomes at once surface water— a 'common enemy,' against which anyone may protect himself. The great weight of authority, however, supports the view that it is to be so regarded only in case it has ceased to be a part of a general current following the channel; that if it continues to flow in the same direction while outside of the banks, returning thereto upon the subsidence of the flood, it is to be deemed

a part of a running stream, and that it only loses its character as such when it spreads out over the open country and settles in stagnant pools or finds some other outlet [citing cases]."   (p. 621.)

In *Riddle v. Railway Co.*, 88 Kan. 248, 128 Pac. 195, it was held:

"Water which overflows the banks of a river and then flows down a natural depression in the same general direction as the river, and which returns to the river upon the subsidence of the flood, is to be deemed a part of the running stream."   (Syl. ¶ 4.)

This is in accordance with the holdings of the courts generally. (*Watts v. Evansville, etc., R. Co.*, 191 Ind. 27; *Krueger v. Crystal Lake Co.*, 111 Neb. 724.)   In *Mo. Pac. Rly. Co., v. Keys*, 55 Kan. 205, 40 Pac. 275, overflow waters were treated as surface waters, but in *Thompson v. McDougal*, 103 Kan. 373, 175 Pac. 157, this was held to be no longer controlling, and, indeed, had been superseded in the cases above cited.   In *Union Trust Company v. Cuppy*, 26 Kan. 754, it was held:

"A railroad company in constructing its road over a natural watercourse is required to leave such openings as are sufficient to afford an outlet for all water (from whatever source it may come, in times of floods and freshets, as well as at other times), which may reasonably be expected to flow through such watercourse."   (p. 756.)

Similar rulings have been made in *Mo. Pac. Rly. Co. v. Webster*, 3 Kan. App. 106; *Railway Co. v. Herman*, 74 Kan. 77, 85 Pac. 817; *Lynch v. Payne*, 117 Kan. 5, 230 Pac. 85, and in other cases.

In *Parker v. City of Atchison*, 58 Kan. 29, 48 Pac. 631, it was held:

"The owner of property on the bank of a watercourse has a right to build barriers and confine the waters to the channel of the stream; but he cannot build and maintain a structure which will change the channel or project the waters against or upon the property of others in such a way as will result in substantial injury to such property."   (Syl. ¶ 1.)

And in the opinion it was said:

"Power is also given to the city to alter and change the channel of streams and watercourses. . . . In doing so, however, reasonable care should be exercised to avoid unnecessary injury to private property. . . . The fact that there is statutory authority for the same does not exempt the city from liability for injury to private property. In making the improvements it is not required to provide for extraordinary floods and storms, but must exercise reasonable care to guard against such conditions as are ordinarily incident to the creek."   (p. 39.)

This was followed in *Beard v. Kansas City*, 96 Kan. 102–105, 150 Pac. 540, and in *Thompson v. McDougal*, 103 Kan. 373, 175 Pac.

157, and is generally recognized as the correct rule in other states. (*Town of Jefferson et al. v. Hicks,* 23 Okla. 684; *Jackson v. Knight,* 268 S. W. 773 [Tex.] ; *Cleveland, C. C. & St. Louis Ry. Co. v. Woodbury Glass Co.,* 120 N. E. 426 [Ind.] ; *Anderson v. Chicago, B. & Q. R. Co.,* 102 Neb. 497; *Keck v. Venghause,* 127 Ia. 529; *Cline v. Railway Co.,* 69 W. Va. 436; *Sparks Manufacturing Co. v. Town of Newton,* 57 N. J. E. 367. See, also, 40 Cyc. 572.)

As to what is meant by the term "ordinary floods," it was said in *Riddle v. Railway Co.,* 88 Kan. 248:

"Provisions need not be made for unprecedented floods which could not reasonably have been foreseen, but whatever the term by which a flood may be designated, if such floods have occurred frequently at irregular intervals it is reasonable to expect that they will occur again, and those who place obstructions in the watercourse should provide for the escape of such flood water." (Syl. ¶ 2.)

In *Garret v. Beers,* 97 Kan. 255, 155 Pac. 2, it was said:

"A flood caused by a heavy and protracted rain, no greater than had fallen 'many a time before' within the duration of a man's experience, is not such 'an act of God,' as will excuse one who changes the natural course of a stream into a new channel which is inadequate to carry off its waters without damage to neighboring property." (Syl. ¶ 3.)

This accords with the general rule. In 13 Am. & Eng. Ency. L., 2d ed., 687, it is said:

"An ordinary flood is one the repetition of which, though at uncertain intervals, might, by the exercise of ordinary diligence in investigating the character and habits of the stream, . . . have been anticipated. An extraordinary flood is one of those unexpected visitations whose comings are not foreshadowed by the usual course of nature, and whose magnitude and destructiveness could not have been anticipated or provided against by the exercise of ordinary foresight."

In 2 Farnham on Waters, section 577*a*, it is said:

"A flood is not extraordinary which is such as residents of the neighborhood might expect from their observation. The rule is stated in the Alabama court as follows: 'Floods such as from climatic and geographical conditions may reasonably be expected, whether of frequent or infrequent occurrence, must be taken into consideration in estimating hazards attending the obstruction of watercourses. The term "act of God," in its legal sense, applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them.' And that rule must be regarded as the proper one. The Illinois court of appeals held that 'Extraordinary floods are those not occurring annually.' But the mere fact that a flood does not occur annually will not make it an extraordinary one, if from the climatic conditions and the character of the country,

. Clements v. Phœnix Utility Co.

it is likely to occur, and has been known to occur, with sufficient frequency to warn those living in the vicinity that it is likely to occur at any time. The question of whether a flood is ordinary or extraordinary is in most cases for the jury."

Applying these to this case: The flood in this case was an ordinary flood, similar to those which had occurred at irregular intervals previously, not as great as the one of the year before; one which a person familiar with the history of the river at that point would naturally anticipate. In constructing the grade or embankment for its roadbed defendant made no provision, or very little provision, for letting the flood waters pass, but made provision only for surface drainage. The flood waters were flowing along with the general course of the stream, to return to it or its outlet further along its course, and hence were a part of the river. Because of this embankment, plaintiff's land was covered to a larger area and to a greater depth than it would otherwise have been. The result is, plaintiff sustained damages which he would not otherwise have sustained, for which defendant is liable.

Appellant argues that no negligence of defendant was shown and that its grade or embankment was not the proximate cause of the injury. These contentions lack merit.

The judgment of the court below will be affirmed.