No. 29,158.

John H. Gentry, *Appellee*, v. Nicholas T. Weaver et al., *Appellants.*

(288 Pac. 745.)

Opinion filed June 7, 1930.

*J. C. Hogin* and *N. J. Ward,* both of Belleville, for the appellants.
*Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action between adjoining landowners, wherein the plaintiff sued the defendant for a mandatory injunction

to remove a dike which the latter had constructed across a swale on his land to prevent the natural flow of water from the land of plaintiff.

It appears that for many years the defendant, Nicholas T. Weaver, has been the owner of the southeast quarter of section 31, township 7, range 5, in Cloud county. In 1923 plaintiff acquired the southwest quarter of the same section. ·There is a shallow, intermittent watercourse, known as Lost creek, which drains several sections of land in that vicinity. It enters plaintiff's land at its north line about 600 feet from the northeast corner. It holds a southerly course for over 80 rods and then turns easterly for about 450 feet, and thence southeasterly across the boundary line between the lands of these litigants at a point about 40 rods north of the section line. Thence it angles southeasterly through defendant's land and across the section line toward lands of lower proprietors.

When plaintiff acquired his land he set about cleaning and straightening the channel of the creek, and piled and scattered on its right and left banks the soil and debris which he dug from the stream bed. At and near the point where the creek leaves his land and enters the land of defendant, plaintiff erected a low levee on the right bank. Defendant built a corresponding levee on the left bank. Both levees were made parallel to the course of the stream, which thereabout ran southeastwardly, but defendant also extended the upper end of his levee or dike directly northward away from the stream, at right angles thereto, for several hundred feet. That upper part of defendant's dike crosses a swale or depression which lies in the natural course of drainage for a few acres of plaintiff's land immediately to the west. The effect of this dike, in rainy seasons, has been to hold water on plaintiff's land which would naturally drain toward the east, and on more than one occasion plaintiff's growing crops of alfalfa have been drowned in consequence.

These and similar incidents precipitated a lawsuit between these parties in 1926, but through the friendly interposition of neighbors the litigants came to an understanding whereby the *status quo* was to be preserved between them and the lawsuit dismissed. At that time, however, according to plaintiff's contention, defendant's dike across the swale which dammed the water on his alfalfa field was either not constructed or not to the height it was being maintained at the time the present action was begun. The incidents of the

earlier lawsuit are of minor consequence in this case, serving merely as matters of inducement hereto. There was no binding adjudication, not even a dismissal with prejudice.

In the present case the pleadings and evidence covered a considerable range of issues and inquiry. The trial court made findings of fact, some of which we have summarized above. Others, in part, read:

"5. That before plaintiff did any work on Lost creek the south [right] bank thereof was probably a little higher than the north and east [left] bank, but not to exceed a few inches.

"6. The land of plaintiff and defendant is generally level, is agricultural land, and slopes from the north to the south, the southwest corner of plaintiff's land being the lowest part of his land, . . .

"7. The improvements on plaintiff's land are east of Lost creek, and near the east line of plaintiff's land . . .

"8. There is a depression just south of the improvements of plaintiff, running from Lost creek east onto the land of defendant, which is slightly lower than the land towards Lost creek and to the north; . . .

"9. That before any work was done by the plaintiff on Lost creek, in time of floods, when more water came down Lost creek than its channel would carry, most of the water overflowed to the southwest, and passed over plaintiff's land to the southwest, passing off his land within two or three hundred yards of the southwest corner thereof, but sometimes when the water was higher than the ordinary flood water it would pass to the east, south of the improvements on plaintiff's land, through the depression mentioned in finding number 8 into the lands of the defendant, and across his land toward the east.

"10. That in 1925 the defendant constructed a dike on his land, starting south of the north end of the hedge on the division line and running south to Lost creek, and then southeast along its course for 100 or 150 feet; this dike is two or three feet in height, and extends north and south across the depression mentioned in finding No. 8, on the west of this dike, and between it and the hedge is a ditch constructed by defendant, the bottom of which is slightly higher at some places between said depression and Lost creek than it is at said depression. . . .

"11. This ditch is sufficient to carry the ordinary surface water that falls and runs into said depression quickly into Lost creek, but when the flood waters overflowing Lost creek are high enough to get into this depression, said ditch is not sufficient to carry away said waters and is prevented from carrying the water off rapidly because the level of the water in Lost creek where it empties is so near the level of the water at the north end of said ditch.

"14. That the parties to this action in all their transactions in reference to building dikes and ditches to repel or drain water from or off their respective lands had no intent to injure the property of the other, but all things were done in an honest endeavor to protect their own property and interests, and the court finds this was their purpose and that none of the parties to this suit

had any intention at any time to injure the property of the other or do him wrong.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"16. That the height of the. south [right] bank of Lost creek, where it enters the land of defendant, is one foot higher than the level of the depression in the triangular [alfalfa] patch of land owned by plaintiff west of the levee constructed by defendants, and this is the lowest point of elevation on the south bank of Lost creek on the premises of plaintiff. That said levee made by defendants at the south end thereof is one-half foot lower than the levee on the south side of Lost creek where it enters the land of defendant; that its height is gradually raised toward the north until it is a little over a foot and a half higher at the north end.

"17. The court further finds that the defendants are justified in building the levee on their land of which plaintiff complains, in the same height that it now exists, except the north 150 feet, which should be lowered approximately one foot, and that if this is done by the defendants within thirty days the relief asked for plaintiff should be denied.

### "CONCLUSIONS OF LAW.

"1. From the above findings of fact the court concludes that as a matter of law the plaintiff was justified in making what changes or improvements he did on Lost creek, and that the damage, if any, sustained by plaintiff on account of the defendant constructing a levee on defendant's land complained about in this action, is contributed to by his own acts in raising the southwest bank of Lost creek so that it forces the flood water to the north and east of the regular channel of said creek to such a height that the water cannot drain through the ditch constructed by defendants into Lost creek.

"2. That plaintiff is not entitled to an injunction in this case, if the dike of defendants be lowered one foot on north 150 feet thereof. Judgment is rendered for the defendants and against the plaintiff for one-half of costs and against defendants for one-half of the costs."

On June 25, 1929, judgment was entered accordingly and on July 8, 1929, defendants served their formal notice of appeal.

Several questions of appellate procedure are raised by counsel for appellee because defendant's appeal was taken before the trial court passed on certain motions—for a new trial, for judgment, to set aside certain findings and for additional findings. It is also suggested that when the trial court did rule on these motions, which was several months after the appeal was taken, it entered a different judgment which in effect superseded the judgment of June 25, and the later judgment has not been appealed.

We hardly think the judgment entered on October 2, 1929, superseded the judgment of June 25. Liberally construed, it modified the earlier judgment on a detail of no present importance, but in its

main aspects it confirmed it. As our whole system of procedure and practice favors the right of appeal, the court holds that the judgment of June 25 is here for review.

It is quite correct, however, that since no appeal has been taken from the trial court's ruling on the motion for a new trial, nor from the other adverse rulings entered on October 2, our appellate review is necessarily restricted to questions of law arising on the pleadings and on the findings of fact and conclusions of law, and the propriety of the judgment entered thereon. (*Buckwalter v. Henrion*, 111 Kan. 781, 208 Pac. 645; *King v. Stephens*, 113 Kan. 558, 560, 215 Pac. 311; *Seigle v. Soldiers' Compensation Board*, 119 Kan. 253, 254, 237 Pac. 657; *Burnham v. Burnham*, 120 Kan. 90, 91, 92, 242 Pac. 124.)

Turning, therefore, to the matters which are open to this review, appellant summarizes his specifications of error into three questions for our consideration, viz.:

"1. Did the court rightfully decree that the defendants remove one foot off of the top of the north one hundred fifty feet of their levee, which levee the court found had been rightfully built and maintained?

"2. Did the court rightfully divide the costs between the parties?

"3. Did the court rightfully render no relief under the cross petition?"

It would seem that the first of these questions is effectively answered by the findings of fact. The swale or depression across which defendant constructed his dike is slightly lower than plaintiff's alfalfa field to the west. When more water comes down Lost creek than it can carry, part of it flows over the alfalfa field through the depression, which is its natural outlet, across defendant's land. That natural outlet has been obstructed by defendant's dike. The pertinent statute says:

"A lower owner or proprietor shall not construct or maintain a dam or levee for the purpose of obstructing the flow of surface water onto his land to the damage of the adjacent upper owner or proprietor; but nothing herein shall be construed as preventing an owner of land from constructing a dike or levee along the bank of a natural watercourse to repel flood water from such natural watercourse: *Provided,* That the provisions of this act shall apply only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city." (R. S. 24-105.)

Defendant argues that plaintiff is not entitled to complain of this dike under the rule announced in *Thompson v. McDougal*, 103 Kan. 373, 175 Pac. 157, because of some wrongdoing on his own part.

The record shows nothing of that sort. Plaintiff was entirely within his rights in cleaning out the channel and in piling and scattering the debris on both banks of the creek. In so doing he did not create a solid levee. The only levee constructed by plaintiff was a short one along the right bank of the stream at and near the point where it enters the land of defendant. This short levee was lawfully constructed by plaintiff (R. S. 24-105, 24-106) as was also that part of defendant's levee on the left bank of the creek opposite thereto. Defendant concedes that the statute accorded plaintiff that right, but argues that "likewise under the same section the defendants had a right to build their dike in order to repel flood waters." Quite true, but not across the natural course of drainage, and to the detriment of plaintiff as the upper landowner. (*Clements ·v. Phœnix Utility Co.*, 119 Kan. 190, 237 Pac. 1062.) Defendant's argument is predicated on the assumption that plaintiff did something on his land which he had no right to do and which in turn justified defendant in his plain breach of the statute. So far as plaintiff's drainage activities are concerned, he not only had a right to clean the debris out of the channel but to straighten it, and this record does not show that plaintiff trenched upon defendant's rights in any respect.

Attention is repeatedly directed to that part of finding No. 9 which says that prior to the work done by plaintiff to improve the drainage of Lost creek, when more water came down the creek than it could carry, most of it passed over plaintiff's land to the southwest. The same finding noted the fact of present concern, however, which is that sometimes, when the flood waters were higher than common, part of it found an outlet through the depression which extended into defendant's land. (*Skinner v. Wolf*, 126 Kan. 158, 266 Pac. 926.) That outlet no longer exists because of defendant's dike. The sum and substance of the trial court's judgment is that defendant must lower that dike. That judgment is eminently fair to defendant. It did not order the complete demolition of the dike. It only ordered that the dike be lowered one foot in height on the north 150 feet of that part of it which turns entirely away from the creek and crosses the swale which in times of unusually high water furnishes the natural outlet to water in plaintiff's alfalfa field.

Defendant also contends that plaintiff's evidence did not show damages sufficient to justify the court in granting him equitable re-

lief. That point, however, is foreclosed because of the limitations of this appeal.

Another suggestion is based upon the settlement of the first lawsuit between these litigants in 1926. However, as that lawsuit was dismissed without prejudice and the terms of its settlement are not before us for review, except as indicated in the findings of fact, it cannot be said as a matter of law that the settlement of 1926 precluded the form and substance of the judgment entered in the instant case.

At the beginning of his brief, defendant postulated for our consideration the question whether defendant was entitled to relief under his cross petition. In his cross petition he asked that plaintiff be "compelled to restore Lost creek upon his premises substantially to the same condition in which it was at the time he acquired title." That is to say, the debris plaintiff dug out of the creek bed should be scraped up from both banks and dumped into the creek again; the places where he straightened the channel filled up and the circuitous parts of the channel again opened so that the stream may resume its old course; and that plaintiff be required to remove his short levee opposite defendant's levee near the place where the creek leaves plaintiff's land and enters defendant's land. It needs no argument, we trust, to support a decision that such a cross petition was ill-founded and that the trial court quite correctly disposed of it. Indeed, this phase of defendant's appeal is not seriously discussed in his brief.

Touching the matter of the division of costs, this being an equitable proceeding where neither money nor property was sought to be recovered, and no showing of abuse of discretion is made, the trial court's assessment and apportionment of the costs scarcely present a question for appellate review. Plaintiff also in oral argument inveighed against the assessment of half of the costs to him. There is less merit in defendant's complaint thereat, but under the circumstances the trial court's order as to the apportionment of the costs will have to stand. (R. S. 60-3706; *City of Emporia v. Whittlesey*, 20 Kan. 17; *Amusement Syndicate Co. v. Martling*, 118 Kan. 370, 379, 235 Pac. 126.)

Other points of argument urged against the judgment have been carefully considered, but do not justify further discussion. The limited record open to review discloses no material error, and the judgment is affirmed.