No. 37,629

GEORGE HORN, ALICE ROBERTS GINGLES, CHARLES A. GREEN and SARA E. GREEN, *Appellees,* v. GLEN SEEGER and MARGARET SEEGER, *Appellants.*

(207 P. 2d 953)

Opinion filed June 11, 1949.

*D. A. Hindman,* of Stockton, argued the cause, and *W. A. Barron* and *Wallace Sullivan,* both of Phillipsburg, were with him on the briefs for the appellants.

*William B. Ryan,* of Norton, argued the cause, and *Keith G. Sebelius,* of Norton, and *Doris Dixon Stowell* and *William Henry Stowell,* both of Phillipsburg, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: In this action plaintiffs seek a mandatory injunction to compel defendants to remove a dike or levee constructed on their own property, running in a southeasterly direction on the north side of a natural watercourse, and to fill up a ditch made in connection therewith.

Defendants defend with an answer asserting the dike, levee and the ditch are lawful, and in addition request a mandatory injunction against George Horn, one of the plaintiffs and an upper landowner, directing him to fill up an excavation made in the bank of such natural watercourse and requiring him to remove dirt placed in the bed thereof.

Neither plaintiffs nor defendants were entirely satisfied with the judgment, presently to be detailed, and originally appeals were taken by all parties from portions deemed to be adverse to their respective interests which included factual issues and alleged trial errors none of which are longer in controversy because in their briefs, and on argument of the cause, counsel for all parties concede and rely on the findings of fact made by the trial court and now assert the sole issues involved depend upon whether, under such findings, the trial court's general judgment and conclusions of law filed in connection therewith are erroneous.

On the date of the institution of the action there was attached to the petition a map or plat, used during the trial and found by the court to be fairly accurate, showing the land involved, its ownership and the dike in question, to which the trial court referred in its findings and on which it made certain pencil lines and notations. Without this plat, in condition as indicated, a proper understanding

of the findings or the involved factual situation would be extremely difficult. For that reason it is attached to this opinion as Appendix "A." In passing, it should perhaps be stated, the defendants offered and the court received in evidence a photographic map which, while it supplements the plat to which we have referred, is not nearly as complete or informative and hence will not be set forth in this opinion.

Since the parties agree the findings of fact are so complete and tell the story of the lawsuit so well that a further factual statement is neither necessary nor practical, such findings, even though they are lengthy, together with the conclusions of law on which the judgment was rendered, will be set forth in their entirety. They read:

"1. It is agreed by all parties that the respective parties to this action own the various tracts of land as set forth in the pleadings herein, and the court so finds.

"2. Prior to the commencement of this action the sixty acres described as the SE¼ of NW¼ and N½ of NE¼ of SW¼ in Section 35 was owned by George Bushnell and Effie Bushnell, and is referred to herein as the Bushell property. It was also referred to in some of the testimony as the Poole property.

"3. Since the beginning of this action the Bushnell property has been purchased by plaintiff George Horn. The plaintiff George Horn had full knowledge of the acts of Bushnell pleaded by defendants.

"4. That the map or plat set out in plaintiffs' petition between pages 3 and 4 thereof is a fairly accurate map of the land involved and of the dyke erected by the defendants. The pencil line and notations thereon have been made by the court.

"5. That for many years a natural watercourse ran through parts of Sections 35 and 36, Township 4 South, Range 19, in which sections the land involved in this action are located. Said watercourse is now, and for many years has been, known as Meyer Creek. Said creek commences several miles to the southwest of Section 35 and enters the west side of said section somewhere near the middle of said section. It enters the Bushnell property at a point on the west line of the N½ of NE¼ of SW¼, then flowed north and northeasterly to a point approximately one-half of the distance to the north line of the SE¼ of NW¼ of said section measured from the south line of said SE¼ of NW¼. From thence it flowed east to a point about one hundred yards from the east line of said SE¼ of NW¼ and from thence south to a point about 250 feet north of the center line of said section, at which point there was a natural dam or tongue of land which will be hereinafter further referred to. This is the point where Bushnell made an excavation in 1944. Prior to the making of such excavation said Meyer Creek flowed south and westerly to a point approximately 150 yards north of the south line of said Bushnell property and then made a bend to the east to a point about 150 feet north of the southeast corner of said Bushnell tract, where it left the

Bushnell property and continued in an easterly and southeasterly direction across the corner of defendants' property and continued through the respective tracts belonging to the plaintiffs, then making a bend to the northeast and emptying into the Solomon River. The court has drawn the course of said Meyer Creek in pencil on the map set out in plaintiffs' petition and has marked same in pencil 'Meyer Creek'. This is the course followed by said Meyer Creek prior to 1937 or 1938 when the course of said creek was altered somewhat by the acts of George Bushnell, and is approximately the course of said creek as shown by the photographic map introduced by defendants as an exhibit. Said creek never flowed at right angles and flowed in the general directions herein set out in the manner usually followed by creeks or natural watercourses, that is, generally along curved lines and with minor variations. That the flow of said creek was very slight at the point where it entered the Gingles property from the west and was farmed across at that point. The watercourse became more clearly defined on the Gingles property due to additional drainage from the south entering it on said property and was a watercourse of more definite banks when it left the Gingles property crossing the road and entering on the Green property.

"6. That in 1937 or 1938 George Bushnell caused said Meyer Creek to be filled in where it crossed his property. The plaintiff Charles A. Green assisted in his work but in so doing was acting for the said George Bushnell and his wife. At the time said work was commenced said creek was from three to eight feet deep, being deeper in some places than others, and from four to six feet in width and with fairly well-defined banks where it ran across the Bushnell tract. A grader and tractor were used in doing this work by parties hired by the Bushnells. The work done by Green was done with a plow. The banks were plowed into the center of said creek and said creek bed was widened out, leaving a depression twenty or thirty feet wide with no well-defined banks. Said land has been farmed across since said time and crops are now growing in what was formerly the bottom of said creek bed. Said creek bed gradually filled up by accretion and lack of use, and such condition existed prior to 1944 and exists at this time.

"7. In 1944 the said George Bushnell made an excavation in the east bank of Meyer Creek at a point mentioned in Finding No. 5 hereof. The court finds that the tongue of land or fill in which said George Bushnell made said excavation in 1944 was a natural tongue or fill, although previous man-made excavations and fills may have been made at the point where Bushnell made said excavation in 1944. There was some conflict in the evidence in regard to the nature of this tongue or fill, and same was referred to in the evidence, frequently, as a dam.

"8. That there is not and has not been a natural watercourse over and cross [across] the land of the defendants; that in times of high water surface water drained across defendants' land in a northeasterly direction; that the part coming onto defendants' land in the N½ of NW¼ of SE¼ of said Section 35 was what the natural watercourse known as Meyer Creek could not carry; that the part draining on defendants' land in the NE¼ of said Section 35 was in part the overflow from the watercourse known as Meyer Creek and in part the natural drainage from part of the NW¼ of said Section 35. There was

a conflict in the evidence as to the number of acres in said NW¼ water from which naturally drained onto defendants' land and not into Meyer Creek, the testimony varying from 100 acres to 20 acres. The court is making no finding as to this acreage.

"9. The filling in of Meyer Creek on the Bushnell land by Bushnells did not of itself increase the flow of surface water onto the land of the defendants. There is no steady flow of water in Meyer Creek through Sections 35 and 36, nor has there been for many years. Said creek did not flow steadily prior to 1937 for a number of years. At one time there may have been a steady flow of water in said creek. From 1937 to the present time said creek has flowed immediately after a rain and in wet seasons more or less continuously, although the flow after twenty-four hours after a rain is reduced to a fairly small flow, described by some witnesses as a trickle or afterflow. Prior to 1944 this trickle or afterflow followed the regular course of Meyer Creek onto the lands of the plaintiffs. By the excavation made by Bushnell in 1944 a considerable portion of this trickle or afterflow was diverted onto the lands of defendants. Additional surface or flood water was also diverted onto defendants by said excavation.

"10. In the spring of 1946 defendants commenced a mandamus action in the District Court of Phillips County, Kansas, for an order compelling Bushnells to remove the dirt they placed in Meyer Creek and to fill up said excavation. The court held that this form of action did not apply for the granting of relief sought by the defendants herein, plaintiffs in that action, and the action was not tried on its merits and was dismissed without prejudice by the court in June, 1947.

"11. In the fall of 1947 defendants constructed the dyke or levee complained of by plaintiffs. It is constructed approximately in the manner alleged by plaintiffs in their petition, except that it does not run to the south side of defendants' property, a gap of about fifty feet exists between the south end of the levee and the south side of defendants' property. The entire length of this levee is about 1,800 feet. It varies in heighth from one foot on the north to more than five feet in some places. From about where said dyke turns and runs in an easterly direction, after having run in a southeasterly direction, it follows the north and east side of Meyer Creek. From this point in a northwesterly direction along the south and west side of said dyke, the defendants have excavated a ditch which enters Meyer Creek at said point where said dyke turns and runs in an easterly direction. This ditch is from two to four feet deep and from eight to twelve feet in width. It conducts drainage into Meyer Creek which ordinarily would reach it in a more roundabout course and is in the general course of natural drainage. Defendants have also widened Meyer Creek from the point where this ditch enters it to a point near the place where it leaves defendants' land on the south and have cleaned it out if they have not actually made it deeper. Said creek bed may not be deeper, except as loose material has been cleaned from the bottom thereof.

"12. The defendants purchased the tract of land owned by them in Section 35 with full knowledge of the drainage conditions existing in said Section and in Section 36. The dam or dyke erected by defendants has caused the natural flow of surface water which otherwise would flow over the land of defendants

to be obstructed and discharged upon the lands of plaintiffs other than the tract of land known as the Bushnell tract. Said discharge of surface water upon the lands of plaintiffs has caused damage to their lands, and will naturally result in greater damage to their said lands in times of more excessive rains and during wet seasons. The seasons since the contruction of said dam have not been very wet seasons. The gap in said levee between the south end thereof and the south side of defendants' property is not adequate to take care of the accumulation of surface water caused by said dyke. The extra. water discharged upon the land by reason of the excavation in the tongue of land or fill, which excavation was made by George Bushnell, caused damage to defendants' land prior to the construction of the dyke by defendants. If said dyke erected by defendants is permitted to remain in its present condition, it would flood the lands of plaintiffs more severely than the testimony shows them to have been flooded in the past and would endanger the buildings and improvements located on the Gingles land and on the Green land.

"13. No upper land owner nearer the source of Meyer Creek than the land of the defendants in Section 35 has constructed a levee along the banks of said Meyer Creek or along any other drainage area or depression draining onto the land of defendants located in said Section 35, and no permission has been granted by the Chief Engineer of the Division of Water Resources of Kansas authorizing them, the defendants, to construct any dyke or obstruction to repel flood waters or any waters or to maintain any dyke or levee.

"14. The court personally inspected the land in question in the company of attorneys for both plaintiff and defendants.

"15. The lands of the plaintiffs and defendants in said Sections 35 and 36 are used exclusively for agricultural purposes.

"16. The findings of fact requested by the parties are both refused except as contained herein."

"CONCLUSIONS OF LAW

"1. The plaintiffs do not have unclean hands and have committed no wrongful acts in connection with the subject-matter in this action. The plaintiff Horn is not chargeable with the wrongful acts of Bushnell so as to make him coming to court with unclean hands, but as owner of the Bushnell sixty may be required to remedy wrongful conditions created by Bushnell, and further, having come into court to ask equity, may be required to do equity.

"2. The cause of action of the defendants against Bushnell and their successors in title is not barred by the Statute of Limitations for the previous action brought by Seegers against Bushnell. The maintenance of the excavation originally made by George Bushnell in the tongue of land or fill on his place constitutes a continuing nuisance, and a mandatory injunction should issue against the present owner of the Bushnell tract, the plaintiff George Horn, to cause him to fill in such excavation and to bring said tongue of land up to a level with the heighth thereof north and south of said excavation and of the part that has washed out following said original excavation and to maintain it at such heighth.

"3. The defendants should not be required to fill in any excavation made by them, but they should be enjoined from making any additional excavations south and west of the place where they constructed the dyke complained of in this action.

"4. The construction of the dyke by defendants along the bank of Meyer Creek was and is lawful. The construction of the rest of the dyke is unlawful, and a mandatory injunction should issue to compel them to remove all said dyke except the part along the bank of Meyer Creek. This would. be all said dyke north and west of the point where said dyke turns and runs in a westerly direction and would constitute about the north and west 1200 feet of said dyke. The land should be reduced to its former level where this portion of the dyke now exists, and a mandatory injunction should issue against the defendants to compel said dyke to be so removed and its maintenance should be enjoined in the future. The maintenance of the east and southeasterly approximately 600 feet of this dyke along the bank of Meyer Creek should not be enjoined, but it should not be extended or raised beyond its present dimensions. The plaintiffs have no adequate remedy at law.
"5. The costs should be taxed to defendants."

Subsequent to making the foregoing conclusions of law, as a result of action which is not here of consequences, amendments were made therein by the trial court as follows:

"It is further by the court ordered and decreed that the conclusions of law filed by the court in this action should be modified or altered in the following respects:
"By striking the last two lines of Conclusion No. 3, after the word 'making,' and inserting or adding in ·lieu thereof, the following: 'said excavations any deeper or deepening bed of Meyer Creek, but may clean weeds and debris out of same if done without further excavation.'
"By adding the following at the end of Conclusion No. 4:
" 'The removal of base of said dike from every low place in former contour of land should not be required if base of dike brought substantially to its former level. Court retains jurisdiction to determine compliance if any disagreement among parties.' "

Summarizing, based on the foregoing findings of fact and conclusions of law, the trial court directed the defendants to remove the northwest two-thirds of their dike and the plaintiff, George Horn, to fill in the excavation made by Bushnell in the east bank of Meyer Creek in 1944. It refused to require the latter to remove dirt placed in the bed of such creek or to compel the defendants to fill up the drainage ditch constructed, and leading into that stream, upon their own land.

The first point relied on by defendants for reversal of the judgment is that the levee or dike constructed by them was lawful as a means of controlling floodwaters from the involved watercourse as distinguished from surface waters. At the outset they err in founding their argument upon the proposition, frequently stated, that in this jurisdiction there is no limitation ˚on their right to control floodwaters. That, we are constrained to state, has never been the law of

this state. As long ago as 1897 in the case of *Parker v. City of Atchison,* 58 Kan. 29, 48 Pac. 631, in discussing the rights of property owners to repel floodwaters, we said:

"The plaintiffs in error had a right to confine the waters of the creek to the channel, and, to accomplish that, were entitled to build cribs or barriers along the south bank of the creek in order to protect their property from the overflow and waste. This must be done, however, in such a way as not to interfere with the rights of others. They cannot build and maintain structures which will change the channel of the stream, or project the water against and upon the property of another in such a way as will result in substantial injury to either an owner upon the opposite side of the stream, or those above or below." (p. 36.).

See, also, *Thompson v. McDougal,* 103 Kan. 373, 175 Pac. 157, where, with direct application to the same question, the following statement appears:.

". . . When those cases were decided, the law of this state permitted a lower landowner to repel surface waters; and while it forbade, as it still does, any landowner to dike against the natural flow of flood waters to the detriment of others, it did permit a landowner, with due regard to the rights of others, to build dikes and barriers to protect his property from overflow and waste. . . ." (p. 375.)

In a later case *Clements v. Phoenix Utility Co.,* 119 Kan. 190, 237 Pac. 1062, we held:

"The owner of property on the bank of a watercourse has the right to build levees or other barriers to confine the water to the channel of the stream, but he cannot build and maintain a structure which will change the channel or project the water against or upon the property of another, either on the same side of the stream with him or the opposite side, in such a way as will result in substantial injury to such property, without liability therefor (following *Parker v. City of Atchison,* 58 Kan. 29, 48 Pac. 631)." (Syl. ¶ 2.)

For more recent decisions wherein the case just cited is followed and the rule therein announced adhered to see *Gentry v. Weaver,* 130 Kan. 691, 288 Pac. 745; *Foster v. Kansas Gas & Elec. Co.,* 146 Kan. 284, 69 P. 2d 729; *Niccum v. Atchison, T. & S. F. Rly. Co.,* 147 Kan. 645, 648, 78 P. 2d 1; *Jensen v. Buffalo Drainage Dist.,* 148 Kan. 712, 718, 84 P. 2d 961.

It must be remembered that in the instant cause the trial court found in substance (see Findings Nos. 8 and 12) that in times of high water surface water drained across defendants land in a northeasterly direction, that the part coming onto the N ½ of NW ¼ of SE ¼ of section 35 was what the natural watercourse known as Meyer creek could not carry and that the part draining on the NE ¼

of such section was in part the overflow of such watercourse and in part the natural drainage from portions of NW ¼ of the same section. Also that it found the dam or dike erected by the defendants caused the natural flow of surface water which otherwise would flow over their land to be obstructed and discharged upon lands of plaintiffs other than the tract known as the Bushnell tract with the result the discharge of such waters caused damage to all such lands and will result in greater damage thereto in times of excessive rains and during wet seasons. It must likewise be kept in mind that it merely enjoined the defendants from maintaining and directed them to remove approximately 1,200 feet of such dike, being the portion thereof running away from and to the north and west of Meyer creek, without disturbing portions thereof constructed along the bank of that stream, and had the practical effect of repelling all water, surface or overflow, emanating from the Bushnell land, which would have otherwise drained across their lands in the general course of natural drainage.

It is our view, under the conditions and circumstances heretofore related, that each and all of the decisions above cited sustain and uphold that portion of the judgment of the trial court to which we have just referred. However, we point out that *Gentry v. Weaver*, supra, is especially applicable and decisive. It, like the case at bar, was an action for a mandatory injunction and involved conditions and circumstances similar if not almost identical. Both plaintiff and defendant in that case had erected dikes parallel to a shallow intermittent stream which drained several sections of land. The defendant, over whose land the overflow from the stream normally flowed in the general course of natural drainage, not only constructed a portion of his dike parallel to the stream but, somewhat like the defendants in the instant case, extended the upper end thereof directly away from the stream and at right angles thereto for a distance of several hundred feet. The trial court's judgment directed a partial tearing down of that portion of the dike which was stopping the natural course of drainage and throwing the overflow from the creek back upon the plaintiff's land. In affirming such judgment we stated it was eminently fair and correct and held:

"The limited record subject to appellate review examined and held that no error inhered in the judgment requiring the defendant to lower the dike he had constructed on his land across the natural course of drainage and which was retarding the flow of water from plaintiff's land." (Syl. ¶ 2.)

In the opinion we said:

"It would seem that the first of these questions is effectively answered by the findings of fact. The swale or depression across which defendant constructed his dike is slightly lower than plaintiff's alfalfa field to the west. When more water comes down Lost creek than it can carry, part of it flows over the alfalfa field through the depression, which is its natural outlet, across defendant's land. That natural outlet has been obstructed by defendant's dike. . . . The only levee constructed by plaintiff was a short one along the right bank of the stream at and near the point where it enters the land of defendant. This short levee was lawfully constructed by plaintiff (R. S. 24-105, 24-106) as was also that part of defendant's levee on the left bank of the creek opposite thereto. Defendant concedes that the statute accorded plaintiff that right, but argues that 'likewise under the same section the defendants had a right to build their dike in order to repel flood waters.' Quite true, but not across the natural course of drainage, and to the detriment of plaintiff as the upper landowner. . . ." (pp. 695, 696.)

Aside from general principles of law which uphold the aforesaid portion of the trial court's judgment another sound reason·for sustaining it is to be found in the statute. G. S. 1935, 24-105, reads:

"A landowner or proprietor shall not construct or maintain a dam or levee for the purpose of obstructing or collecting and discharging with increased force and volume the flow of surface water to the damage of the adjacent owner or proprietor; but nothing herein shall be construed as preventing an owner of land from constructing a dike or levee along the bank of a natural watercourse to repel flood waters from such natural watercourse: *Provided,* That the provisions of this act shall apply only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city: *Provided further, That where such surface water is the overflow of a watercourse on the premises of an adjacent upper landowner and such upper landowner has not constructed or maintained a levee along the bank of such watercourse to prevent overflow, any landowner may make application to the chief engineer of the division of water resources stating in such application that an upper landowner,·whose name and address is given in the petition, has not constructed a levee on his land to prevent the overflow from the stream, and requesting permission to build a levee on his own land to repel such flood water. . . ."* (Emphasis supplied.)

Under the findings the portion of defendants' dike against which the trial court's mandatory injunction was issued repelled all overflow water originating from a watercourse on the premises of an adjacent upper landowner who had not constructed or maintained a levee along its banks to.prevent overflow. In that situation the emphasized language of the statute just quoted required defendants to make application to and obtain permission from the chief engineer of the division of water resources of this state before they

could construct a lawful dike or levee. This they did not do (see Finding 13). The result is their action in attempting to maintain such dike, notwithstanding consequences to riparian owners as heretofore noted, was subject to injunctive relief.

Much stress is placed by defendants in their brief upon their claim overflow from a watercourse is floodwater as distinguished from surface water. Their reason for doing so, in view of their fallacious theory with respect to their unrestricted right to control floodwaters, is obvious. Since the unsoundness of that theory has been demonstrated there is little need for giving much space to decisions distinguishing between the types of water here involved for regardless of how they might be classified defendants could not maintain the upper portion of their dike. We make reference here to such claim because of a contention advanced in connection therewith to the effect that the section of the statute just quoted has application to surface water only. We do not agree. Conceding, as defendants insist, that the overflow of a watercourse has frequently been held to be floodwater under our decisions we have no hesitancy in holding that since 1931 (Laws 1931, ch. 184), when the underlined proviso was added by legislative amendment to what is now G. S. 1935, 24-105, heretofore quoted, there is little distinction to be drawn between the two types of water and that of a certainty by the express terms of such proviso overflow from a watercourse is to be regarded as surface water within the meaning of the latter term as used therein.

In reaching the foregoing conclusion we have not overlooked two decisions heavily relied on by defendants. *Thompson v. McDougal,* supra, which states, as they point out, that the rights and limitations of rights of landowners in dealing with floodwaters were not changed, nor attempted to be changed, by chapter 175 of the Laws of 1911, now in substance the quoted but unemphasized portions of G. S. 1935, 24-105, was decided long prior to the 1931 amendment. Even so, it is to be noted that at page 377 of its opinion we call attention to the fact that if the plaintiff had come into court in an equitable mood herself the defendants would not have been permitted in the maintenance of a levee to retard the flow of water over plaintiff's land and decided the case on the basis that where parties are in equal wrong equity declines relief. *Jensen v. Buffalo Drainage Dist.,* supra, so far as right to deal with floodwaters are concerned, merely quotes from the Thompson case and indicates that what was

there said was a correct statement under the law then in force and effect. However, the opinion recognizes the 1911 statute was changed by the amendment to which we have heretofore referred. It is also to be noted our affirmance of the judgment denying an injunction restraining the maintenance of the dike involved in such case was based upon the premise it had been constructed under and in conformity with existing drainage laws of the state (G. S. 1935, ch. 24, art. 4) after procuring approval for its construction from the officer (chief engineer of the division of water resources of the state) vested with the power to give it. We find nothing in either decision warranting a conclusion the trial court erred in enjoining defendants from maintaining the northwest 1,200 feet of the dam constructed by them.

Defendants suggestion, that even though their dike be unlawful, this court in the exercise of equitable powers should disregard the trial court's judgment and work out some plan whereby they be permitted to maintain it, has little merit. Defendants never obtained permission to construct or maintain the portion of the dam affected by the mandatory injunction from the official designated by legislative fiat as the one having the power to give it. In such a situation we cannot, even in the exercise of equity, usurp the power conferred upon that official and make lawful that which is unlawful.

The last contention advanced by defendants requiring attention is that the trial court erred in not requiring the plaintiff, George Horn, to clean out that portion of Meyer creek which had been filled in by him and used for farming purposes. The short and simple answer to this claim is that the trial court inspected the premises and found that such action did not increase the flow of water onto defendants' land. We cannot disturb that finding.

We now come to questions raised by plaintiffs on their cross-appeal the first of which is that the trial court should have required defendants to remove all of the dike instead of the northwest two-thirds thereof. Resort to the findings will reveal the portion of the dike unaffected by the judgment was constructed along and practically parallel with the banks of the natural watercourse. The statute provides, and we have held, that under such conditions and circumstances the defendants' action as to this portion of the dike was proper and lawful.

See *Jensen v. Buffalo Drainage Dist.*, supra, which holds:

"An owner of real property on the bank of a natural watercourse has a right to build a dike or levee to repel floodwaters from such natural watercourse, as provided and limited by G. S. 1935, 24-105." (Syl. ¶ 2.)

Refusal of the trial court to require defendants to remove the open ditch constructed on their own land along the side of the dike, which as the trial court found (Finding No. 11), conducted drainage into Meyer creek that .ordinarily would reach such stream in the general course of natural drainage, is next assigned as error. This claim cannot be upheld. The statute (G. S. 1935, 24-106) expressly authorizes action of that character.

Lastly plaintiffs insist the trial court erred in directing George Horn to fill in the excavation made by Bushnell in 1944, in the east bank of Meyer creek at the point mentioned in Finding No. 5. In substance the trial court found this excavation increased the normal flow of water on defendants' land and was a continuing nuisance. Plaintiffs are precluded from going behind those findings and they suffice to sustain the trial court's judgment on the point in question.

After a careful and extended examination of the record and consideration of all arguments advanced by the respective parties we have been unable to discern any error in the trial court's judgment. It is therefore affirmed.

W · S → N · E

Sec. 35

N½ N.E.
S.W.

S.E.
N.W.

Meyer Creek

S.W.
S.E.

George Horn

S½ N.W.
S.E.

Dyke or Dam

N½ N.W.
S.E.

E½
S.E.

Alice Roberts Gingles
a minor

N.E.

Glen Seeger
&
Margaret Seeger

Sec. 36

S½ 36

Charles A. Green
&
Sara E. Green

APPENDIX "A"