No. 43,556

MARY SIMON and LEO SIMON, *Appellees*, v. JOHN J. NEISES, MARIE NEISES, and EUGENE M. GRAVES, *Appellants*.

(395 P. 2d 308)

Opinion filed July 14, 1964.

*Rodney H. Busey*, of Wichita, argued the cause, and *Lester C. Arvin* and *Kay K. Arvin*, of Wichita, were with him on the briefs for the appellants.

*Leo R. Wetta* and *Thomas A. Wood*, of Wichita, argued the cause, and *Paul V. Smith, Douglas E. Shay, William C. Farmer* and *James R. Schaffer*, of Wichita, were with them on the brief for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This action was brought by plaintiffs (appellees) Mary Simon and Leo Simon against defendants (appellants) John J. Neises, Marie Neises and Eugene M. Graves seeking a mandatory

injunction to abate a nuisance and the injurious diversion of a watercourse, and to recover damages to crops occasioned by flood waters diverted onto plaintiffs' land by reason of a levee constructed by defendants on a watercourse running through John Neises' land. The pertinent facts follow:

Section 34, Township 26 South, Range 2 West is located in the western part of Sedgwick county. Plaintiff Mary Simon is the owner of the northwest quarter of the section and Leo Simon is her tenant; defendant John J. Neises owns the east half of the southwest quarter of the section; defendant Marie Neises owns the west half of the southeast quarter of the section; and defendant Eugene M. Graves owns the northeast quarter of said section. Defendant John J. Neises farms his own land and that of defendants Marie Neises and Graves. A watercourse had existed in section 34 for many years, which watercourse carried the natural surplus surface water produced from rainfall from about 2,000 acres of agricultural land lying south, southwest and west of section 34. The watercourse entered section 34 on the west line about 400 yards south of the south line of plaintiffs' property and then meandered in an easterly and northeasterly direction across defendant John Neises' land until it reached a point approximately 100 feet south of the south line of plaintiffs' land at which point the watercourse made a sharp and abrupt turn easterly until it reached a point approximately in the center of section 34 where it curved due north on a line between plaintiffs' land and that of defendant Graves.

The mentioned watercourse was cleaned out in 1951. Prior to that time the overflow surface water was distributed equally over the land of the parties in question. There were no levees at any point upon the watercourse with the exception of that part between plaintiffs' land and the Graves land, which levees were of equal height. From 1929 to 1952 flood waters did not cover plaintiffs' property. In 1952 a levee was constructed by defendants on the east side of the watercourse on John Neises' property and varied in elevation from ground level to four feet in height. The levee obstructed the watercourse and had the effect of diverting water from the defendants' property and directing the flow of the surface and flood waters with increased force upon plaintiffs' property at locations where such water did not enter prior to the construction of the levee. Following construction of this levee, and in 1961, it became noticeable to the plaintiffs that waters diverted and directed

onto their property by defendants' levee were cutting a gully in the plaintiffs' field and destroying their fences and crops, and on June 23, 1961, plaintiff Mary Simon commenced this action seeking an abatement of the levee as a nuisance and praying for damages occasioned by its construction.

In addition to what has been said, the facts disclose that no application was made to the chief engineer of the division of water resources for the construction of such levee.

The testimony of Mr. Moehring, a civil engineer for many years, who had made a topographical study of the entire area, was that the dike, or levee, obstructed the watercourse; that it protected the defendants Neises' property from flooding and forced the water in a concentrated direction and flow onto the plaintiffs' property; that if the dike were permitted to remain, the ultimate effect of it would be to create a very definite water channel, where none previously existed, through the plaintiffs' property; that the dike, as constructed, had caused an area of erosion on the Simon property two feet deep and two hundred feet long; and that the estimated cost of restoring this area would be between $700 and $750.

The evidence further disclosed plaintiffs' crop damage subsequent to June 23, 1959, by reason of the overflow due to the levee was $3,047.51, and, in addition, plaintiffs sought to recover a sum not to exceed $750 for the cost of replacing eroded ground on plaintiffs' land.

On quite a voluminous record the jury returned a general verdict in favor of the plaintiffs and against the defendants in the sum of $3,492.85. The trial court approved the verdict of the jury and then found that the construction and maintenance of the levee by the defendants was unlawful and in violation of G. S. 1961 Supp., 24-105 and 24-126, in that no approval of the plans for the construction of the levee was ever obtained from the chief engineer of the division of water resources as required by law, that the maintenance of the levee constituted a continuing nuisance which should be abated and an injunction issued against defendants to abate and remove the levee in question, and that the expense for the carrying into effect the abatement of the nuisance should be paid by the defendants in accordance with the amount of work done on the land of each defendant and entered judgment accordingly. From an order overruling their post trial motions, defendants appeal.

At the outset it is well to state that G. S. 1961 Supp., 24-105, in pertinent part provides:

"It shall be unlawful for a landowner or proprietor to construct or maintain a dam or levee which has the effect of obstructing or collecting and discharging with increased force and volume the flow of surface water to the damage of the adjacent owner or proprietor; but nothing herein shall be construed as preventing an owner of land from constructing a dike or levee along the bank of a natural watercourse to repel flood waters from such natural watercourse if plans therefor have been approved as required in section 24-126 of the General Statutes of 1949, as amended: *Provided,* That the provisions of this section shall apply only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city: *Provided further,* That where such surface water is the overflow of a watercourse on the premises of an upper landowner and such upper landowner has not constructed or maintained a levee along the bank of such watercourse to prevent overflow, any landowner may make application to the chief engineer of the division of water resources stating in such application that an upper landowner, or landowners, if more than one, whose name and address is given in the petition, has not constructed a levee on his land to prevent the overflow from the stream, and requesting permission to build a levee on his own land to repel such flood water. . . ."

G. S. 1961 Supp., 24-126, in pertinent part provides:

"It shall be unlawful for any person, . . . without first obtaining the approval of plans for the same by the chief engineer of the division of water resources, to construct, cause to be constructed, maintain or cause to be maintained, any levee or other such improvement on, along or near any stream of this state which is subject to floods, freshets or overflows, so as to control, regulate or otherwise change the flood waters of such stream; and any person . . . violating any provision of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be punished. . . . And in the event any such structure is about to be constructed, is constructed or maintained by any person, corporation, county, city, town, township or district without approval of plans by the chief engineer, it shall be the duty of the attorney general, to file suit in a court of competent jurisdiction, to enjoin the construction or maintenance of such structure: . . ."

Defendants first contend that neither the petition nor the evidence in support thereof disclosed sufficient facts entitling the plaintiffs to the relief for which they prayed. In considering this contention on reviewing the record, we point out that as early as 1897 in the case of *Parker v. City of Atchison,* 58 Kan. 29, 48 Pac. 631, this court, in discussing the rights of property owners to repel flood waters, stated the aversion must be done in such a way as not to interfere with the rights of others; that structures cannot be built or maintained which will change the channel of the stream or

project the water against and upon the property of another in such a way as will result in substantial injury to either the owner upon the opposite side of the stream or to those above or below. (*Reeder v. Board of County Commissioners,* 193 Kan. 182, 185, 392 P. 2d 888; *Horn v. Seeger,* 167 Kan. 532, 539, 207 P. 2d 953.)

The legislature made it unlawful subsequent to April 2, 1951, the effective date of the passage of G. S. 1961 Supp., 24-105, for a landowner to construct or maintain a levee under conditions which had the effect of obstructing or collecting and discharging with increased force and volume the flow of surface water to the damage of the adjacent owner without first making application to the chief engineer of the division of water resources of this state for the construction of such levee. Where, as in the instant case, such construction caused the natural flow of surface water to be obstructed and discharged upon the land of the plaintiffs causing damage which was especially great during excessive rain and wet seasons, the trial court properly enjoined the maintenance of the offending levee and properly directed its removal. (*Horn v. Seeger,* supra.) The levee in question was constructed by defendants in violation of the mentioned legislative mandate and, in fact, was unlawfully constructed and maintained at all times, and in view of the 1951 statutory amendment the decisions relied on by defendants are no longer applicable.

Defendants assert that under the mentioned statute this type action may be maintained only by the attorney general, not by an individual landowner. The petition in the instant case discloses the plaintiffs are not seeking an injunction because of alleged damage to any public property. The action is brought for the benefit of the plaintiffs alleged to have been damaged by the construction of the levee described in the petition. Such action may be brought by the individual or the party alleged to have been damaged, and the attorney general has no authority in the name of the state to assume the burden of conducting an action on behalf of private individuals. (*Reeder v. Board of County Commissioners,* supra; *State, ex rel., v. Barnes,* 171 Kan. 491, 494, 233 P. 2d 724; *Goering v. Schrag,* 167 Kan. 499, 207 P. 2d 391; *Horn v. Seeger,* supra.) The aforementioned statutes and our decisions clearly authorize a mandatory injunction action under facts such as in the instant case between owners of riparian agricultural lands to compel the removal of a levee unlawfully constructed and the restoration of the

land to its former elevation, and for damages occasioned by its unlawful construction.

It is next contended by defendants the plaintiffs' cause of action is barred by the statute of limitations. They contend the levee was constructed in 1952 and that G. S. 1949, 60-306 *Third,* requires an action involving damage to land be brought within two years. A brief answer to defendants' contention is that plaintiffs are not seeking to recover permanent damages to the land occasioned by the building of the levee; therefore, the statute relied on is inapplicable. Plaintiffs seek to recover temporary damages arising from the maintenance of the levee as a nuisance and limit their recovery to such damages to their crops as they sustained within the period of two years prior to the filing of their petition. This court treated the mentioned question in a fully annotated opinion in the case of *Henderson v. Talbott,* 175 Kan. 615, 266 P. 2d 273, and the authorities and discussion need not be repeated here except to say that where the injury or wrong is classified by the courts not as original or permanent, but as temporary, transient, recurring, continuing or consequential in nature, it has been held that the limitation period starts to run only when the plaintiffs' land or crops are actually harmed by overflow, and that, for the purpose of the statute of limitations, each injury causes a new cause of action to accrue, at least until the injury becomes permanent. (p. 621.) Moreover, the opinion, in quoting from *K. P. Rly. Co. v. Mihlman,* 17 Kan. 224, stated where one creates a nuisance, and permits it to remain, so long as it remains it is treated as a continuing wrong, and giving rise, over and over again, to causes of action. We are of the opinion the plaintiffs' claim for damages occasioned to their crops within the two years preceding the filing of their petition was proper. (*Jeakins v. City of El Dorado,* 143 Kan. 206, 53 P. 2d 798.)

Defendants next complain about the proof of damages to the crops for the years 1959 through 1962. In reviewing the record, we are of the opinion the evidence was sufficient to sustain the jury's verdict and the judgment of the court based thereon. We have reviewed also defendants' requested instructions and those given by the court and find the court neither erred in refusing the defendants' requested instructions nor in those given by the court.

Other errors complained of have been reviewed and found to be without sufficient merit to justify a reversal. The judgment of the trial court is affirmed.