(751 P.2d 1047)

No. 59,644

VERNON W. DEWERFF and MARIAN K. DEWERFF, *Appellants,* v. LEROY G. SCHARTZ, DALE E. SCHARTZ, JOSEPH SCHERMULY, and BARTON COUNTY COMMISSIONERS, *Appellees.*

Opinion filed March 17, 1988.

*Robert L. Peter,* of Carpenter & Peter, of Great Bend, for the appellants.

*Robert L. Bates,* of Hagen, Bates & Suelter, of Great Bend, and *Larry E. Keenan,* of Keenan Law Firm, P.A., of Great Bend, for the appellees.

Before SIX, P.J., BRAZIL and ELLIOTT, JJ.

Six, J.: Plaintiffs Vernon and Marian DeWerff appeal from the trial court's denial of their request for an injunction to enjoin defendants Dale Schartz and Joseph Schermuly from pumping water from the Schermuly farmland. The DeWerffs also appeal the trial court's award of damages to Dale Schartz and Schermuly based upon the wrongful issuance of a temporary restraining order.

LeRoy Schartz, originally named as a party defendant in this action, was dismissed at the pretrial conference.

The issues are: (1) Did the trial court err in allowing defendants Schermuly and Schartz to continue to pump water from behind the berm located on the Schermuly property, (2) did the trial court abuse its discretion in denying the DeWerffs' request for an injunction to remove the northernmost of the two ditches on the north side of Schermuly's property, and (3) did the trial court err in awarding Schermuly and Schartz damages for the wrongful issuance of the temporary restraining order?

We affirm on issues (1) and (2). We reverse and remand with directions on issue (3).

The DeWerffs and Schermuly are abutting owners of quarter sections of farmland located in Barton County, Kansas. Dale Schartz has been the tenant of the Schermuly property since 1976 and farms the property on a sharecrop basis.

The DeWerff land lies directly east of the Schermuly land. An elevated dirt township road runs between the two properties. Excess water from Schermuly's property naturally drains in an easterly direction onto the DeWerffs' land. In 1968, Schermuly leveled his quarter section for irrigation purposes, eliminating many low spots and depressions which had previously retained water after rainfall. To maintain the surface water retention capacity of his property, Schermuly constructed small berms along the entire east side of his property and along a portion of the south side. These berms directed tailwater from the property into a tailwater pit located in the northeast corner of the property. In addition, Schermuly dug two ditches on the north side of the property. The southernmost of these two ditches carried tailwater from the Schermuly property into the tailwater pit. The northernmost ditch took the water draining from other properties to a drainage ditch on the west side of the dirt township road.

The water would be carried south in this ditch and then east towards the DeWerff property though culverts installed by the county under the road.

The southern eighty acres of the DeWerff property were previously owned by Frank Neff. After Schermuly completed his leveling activities, Neff constructed a dike along the west side of his property to repel waters draining from Schermuly's property. The dike forced the water back onto the Schermuly property, so Schermuly and Schartz increased the height of the berm to prevent this. After the berm was heightened, the DeWerffs, who then owned only the north eighty of the quarter section, constructed a dike on the west side of their property, much like Neff had done on the south eighty. In 1981, the DeWerffs acquired the south eighty owned by Neff.

During periods of heavy rain, water would collect on the west side of Schermuly's berm. Prior to this action being filed, Schermuly and Schartz would pump this water from behind the berm into the ditch on the west side of the dirt township road. The water would travel south to the culverts and then east towards the DeWerff property.

The DeWerffs initiated this action on April 22, 1985, seeking damages and injunctive relief. The DeWerffs alleged that the pumping activity unlawfully diverted and accelerated the flow of water onto their property. The same day, they procured a temporary restraining order without bond, enjoining Schermuly and Schartz from pumping water from behind the berm. The parties agreed to a controlled pumping agreement and the restraining order was lifted.

Schartz and Schermuly filed an answer and counterclaim, alleging that the DeWerffs had wrongfully caused the issuance of the temporary restraining order. The trial court, among other things, ordered that (1) Schermuly and Schartz could pump water from behind the berm only if the water in the township road ditch was lower than the water behind the berm and prior notice was given to the DeWerffs, (2) Schermuly and Schartz need not fill in the northernmost of the two ditches on the Schermuly property, and (3) Schermuly and Schartz were entitled to $2,718 each in damages resulting from the wrongful issuance of the restraining order.

## 1. CONTINUED PUMPING FROM BEHIND THE BERM

The DeWerffs contend the trial court abused its discretion in refusing to enjoin Schermuly and Schartz from pumping water from behind the berm into the township ditch.

Injunctive relief is equitable in nature and its grant or denial in each case is governed by the principles of equity. Absent an abuse of discretion, the appellate court will normally not interfere with a trial court's decision granting or denying injunctive relief. See *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, 226-27, 689 P.2d 860 (1984); *Kansas State Bd. of Pharmacy v. Wilson*, 8 Kan. App. 2d 359, 361, 657 P.2d 83 (1983).

Under common law, surface water was a common enemy of landowners. The landowner was free to elect the method of control. The enactment of the statutory forerunners to K.S.A. 24-105 and 24-106 modified the common law. A landowner's right to deal with surface water in any manner was restricted. *Clawson v. Garrison*, 3 Kan. App. 2d 188, 195, 592 P.2d 117 (1979). K.S.A. 24-105 provides in relevant part:

"It shall be unlawful for a landowner or proprietor to construct or maintain a dam or levee which has the effect of obstructing or collecting and discharging with increased force and volume the flow of surface water to the damage of the adjacent owner or proprietor."

The rule in Kansas now is "that as to agricultural lands outside the incorporated limits of a city, upper proprietors may not divert their surface waters by artificial means onto the lands of lower proprietors nor accelerate by means of ditches or increase the drainage of their lands to the injury of lower owners." *Clawson v. Garrison*, 3 Kan. App. 2d at 203 (citing *Goering v. Schrag*, 167 Kan. 499, 501, 207 P.2d 391 [1949]). The DeWerffs rely on this rule. They contend: (1) The pumping activity by Schermuly and Schartz constitutes an acceleration or increase in drainage of water onto the DeWerff property, (2) the pumping activity injures them, and (3) such activity should have been enjoined entirely, not merely regulated.

The evidence in the case is controverted as to whether the leveling and pumping activities actually increased the amount of drainage onto the DeWerff property.

According to the evidence, the increase in the amount of drainage of water onto the DeWerff property could range from

3.9 acre feet (assuming the tailwater pit was full) to 0 acre feet. The trial court apparently believed that the leveling of the Schermuly property did not affect its surface water retainage capability. That conclusion is borne out by the evidence.

The controlled pumping allowed by the trial court's order does not appear to have sanctioned an increase of drainage of the Schermuly property onto the DeWerff property. Under the court's order, water may be pumped from behind the berm only when the water in the ditch on the west side of the township road is below that in the berm *and* prior notice is given to the DeWerffs. The court was attempting to arrive at an equitable result whereby controlled pumping was permitted during those times when the township ditches were sufficiently low to contain and carry the water through its natural course.

A trial court is given discretion in determining whether to grant or deny an injunction. A trial court's decision will only be overturned upon a showing of an abuse of discretion. An abuse of discretion exists when no reasonable person would take the view adopted by the trial court. One who asserts an abuse of discretion bears the burden of showing such abuse. *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, 695, 715 P.2d 2 (1986) (quoting *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, 131, 671 P.2d 511 [1983]). In this case, the trial court's order was structured to avoid further problems between the parties by incorporating the controlled pumping arrangement into a court order. The trial court did not abuse its discretion.

## 2. THE NORTHERNMOST OF THE TWO DITCHES ON THE NORTH SIDE OF SCHERMULY'S PROPERTY

The DeWerffs contend the trial court abused its discretion in denying their request for an injunction to require Schermuly to remove the northernmost of the two ditches on the north side of Schermuly's property. The DeWerffs' position is that the ditch diverts water and causes an acceleration of drainage onto their property, contrary to the rule reaffirmed in *Clawson v. Garrison*, 3 Kan. App. 2d at 203.

K.S.A. 24-106 provides in relevant part:

"Owners of land may drain the same in the general course of natural drainage, by

constructing open or covered drains, into any natural depression, draw, or ravine, on his own land, whereby the water will be carried by said depression, draw, or ravine into some natural watercourse, or into any drain upon a public highway, for the purpose of securing proper drainage to such land; and he shall not be liable in damages therefor to any person or persons or corporation."

In *Horn v. Seeger*, 167 Kan. 532, 207 P.2d 953 (1949), the court approved the use of an open ditch to drain water in its natural course to a natural watercourse.

The northernmost of the two ditches on Schermuly's property carried excess water from neighboring lands to the township road ditch, which in turn carried the water to the ditch along the county blacktop. The natural course of the water was west to east, the direction of the northernmost ditch. Schermuly drained his property "by constructing open . . . drains . . . whereby the water will be carried . . . into any drain upon a public highway, for the purpose of securing proper drainage to such land." K.S.A. 24-106. The construction of the northernmost of the two ditches was authorized by K.S.A. 24-106. The trial court did not abuse its discretion in refusing to grant the DeWerffs' request for an injunction to require Schermuly to remove the ditch.

## 3. DAMAGES FOR THE WRONGFUL ISSUANCE OF THE TEMPORARY RESTRAINING ORDER

### a) The Requirement of Malice

The DeWerffs contend the trial court erred in awarding Schermuly and Schartz damages for the wrongful issuance of the temporary restraining order.

The DeWerffs first suggest the trial court erred in awarding damages because the facts of the case do not indicate that they procured the order with malice. The trial court issued the restraining order without requiring the DeWerffs to post a bond. Under K.S.A. 60-903, a restraining order may be issued without bond.

A party may not maintain an action for the wrongful procurement of a restraining order (other than one upon a bond) without a showing of malice. *Alder v. City of Florence*, 194 Kan. 104, 110, 397 P.2d 375 (1964); *Jacobs v. Greening*, 109 Kan. 674, 676, 202 Pac. 72 (1921). To establish malice, it must be shown that the restraining order was obtained for any improper or wrongful motive. See *Nelson v. Miller*, 227 Kan. 271, 278, 607 P.2d 438 (1980).

Although we may question the results in *Alder* and *Jacobs*, the rule in those cases has not been modified. We are bound by it. We nevertheless must wonder how many trial judges realize when issuing restraining orders without bonds that they are denying the restrained party the opportunity to recover damages unless that party proves malice.

The trial court in this case did not specifically find that the restraining order was obtained with malice. Further, the record on appeal does not support a presumption that the trial court found that the DeWerffs acted with malice. When the trial court has not made a specific finding of fact, the following rule applies:

" '[W]hen the record on review will not support a presumption that the trial court found all the facts necessary to support the judgment, the case will be remanded for additional findings and conclusions even though none of the parties objected either in the trial court or in this court.' " *In re Lett & Jackson*, 7 Kan. App. 2d 329, 331, 640 P.2d 1294, *rev. denied* 231 Kan. 800 (1982) (quoting *Burch v. Dodge*, 4 Kan. App. 2d 503, Syl. ¶ 3, 608 P.2d 1032 [1980]).

We reverse and remand with directions to the trial court to make additional findings with respect to the question of whether the temporary restraining order was obtained with malice.

### b) The Sufficiency of the Evidence on Damages

The DeWerffs contend that the evidence is insufficient to support the trial court's conclusion that the damages suffered by Schermuly and Schartz were the result of the water being held behind the berm while the restraining order was in effect.

Schartz testified that he lost thirteen acres of wheat due to the fact the restraining order prevented him from pumping water from the Schermuly property. Viewing the evidence in the light most favorable to Schermuly and Schartz, we conclude this testimony supports the trial court's finding that Schermuly and Schartz were damaged by the issuance of the restraining order. See *DeGraeve v. Southwestern Bell Tel. Co.*, 9 Kan. App. 2d 753, Syl. ¶ 4, 687 P.2d 1380, *rev. denied* 236 Kan. 875 (1984).

The DeWerffs contend the trial court did not use the proper method of determining the measure of damages to the growing crops.

The issue of the proper measure of damages was never presented to the trial court. "[A] point not raised before, or pre-

sented to the trial court, may not be raised for the first time on appeal." *Lantz v. City of Lawrence*, 232 Kan. 492, 500, 657 P.2d 539 (1983) (citing *Anderson v. Overland Park Credit Union*, 231 Kan. 97, Syl. ¶ 6, 643 P.2d 120 [1982]).

c) The Damage Award and the Restraining Order

The DeWerffs contend the trial court erred in awarding damages for the wrongful issuance of the temporary restraining order because the restraining order was not wrongfully issued. They argue that the trial court's permanent injunction ordering controlled, restricted pumping establishes that the restraining order, which stopped all pumping, was not wrongful.

To recover damages for the wrongful issuance of a restraining order, a party must establish that the temporary restraint imposed was wrongful. *Tobin Construction Co. v. Holtzman*, 207 Kan. 525, 530, 485 P.2d 1276 (1971). The trial court's temporary restraining order restrained Schartz "from accelerating or diverting surface waters onto the lands of the defendant in any manner whatsoever including by means of pumping into adjacent roadside ditches, or diverting [by] means of ditching into adjacent roadside ditches." According to Schartz's testimony, it was the inability to pump any water from behind the berm that caused his damages. The controlled pumping worked well. The trial court ordered controlled pumping. The order restraining Schartz from any sort of pumping activity was wrongful, in light of the final order issued in the case.

In summary, the award of damages must be reversed and remanded. The trial court shall make additional findings as to whether the DeWerffs obtained the restraining order out of malice. If malice is found, Schartz and Schumerly are entitled to damages in the sum of $2,718 each as ordered by the trial court. If there is no finding of malice, the damage award is set aside.

The order of the trial court is affirmed in part, reversed in part, and remanded with directions.